SIXTH DIVISION

No. 1-08-2985

| | | |
|---|---|---|
| AMERICAN AIRLINES, INC., | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County, Illinois, |
| | ) | County Department, |
| | ) | Tax and Miscellaneous |
| | ) | Remedies Section. |
| | ) | |
| v. | ) | No. 07 L 050228 |
| | ) | |
| | ) | |
| THE DEPARTMENT OF REVENUE, | ) | Honorable |
| | ) | Alexander P. White, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE JOSEPH GORDON delivered the opinion of the court:

This case involves two sets of amended tax returns that the plaintiff-appellee, American Airlines Inc. (hereinafter American Airlines), filed with the defendant-appellant, the Illinois Department of Revenue (hereinafter the Department), claiming a refund of use tax it paid to the Department during the months of July 2000 through December 2000. The Department granted a refund in the amount of $183,873, which American claimed in its first amended tax return (hereinafter original refund claim), filed on October 2, 2003, but denied American a refund in the additional amount of $518,059, which American sought with respect to the same months, but which it filed in a subsequent amended tax return form on May 9, 2005 (hereinafter second refund claim).

American protested the Department's denial and requested a hearing before an

administrative law judge (hereinafter ALJ). The parties agreed that the issue to be resolved was whether an amendment to a timely filed claim for a tax refund is deemed filed within the statute of limitations under section 21 of the Illinois Use Tax Act (UTA) (35 ILCS 105/21 (West 2006)). The ALJ found that American's second refund claim had been untimely filed and therefore barred and recommended that the Director of the Department finalize the Department's denial of that claim.

After the Director sent a notice of final determination to American, American sought review of this decision with the circuit court. The circuit court agreed with American and reversed the decision of the Department, ordering the Department to issue refunds of the use tax to American in the amount of $518,059 with applicable interest as required by the Uniform Penalty and Interest Act (35 ILCS 735/3-5 (West 2002)). The Department now appeals, contending that: (1) strictly construing the provision of section 21 of the UTA (35 ILCS 105/21 (West 2006)), American's refund claim was filed outside of the three-year statute of limitations mandated under that provision and was therefore time-barred; (2) American's original refund claim was not a "protective claim," as defined under the holding of this appellate court in Dow Chemical Co. v. Department of Revenue, 224 Ill. App. 3d 263, 586 N.E.2d 519 (1991), so as to permit the tolling of the statute of limitations for an amendment to such a claim, because American's second refund claim was not an amendment to the original refund claim but rather a separate claim, based upon different transactions with different factual and legal predicates; (3) the relation-back doctrine does not apply to proceedings under the UTA, so as to permit late amendment to a timely filed claim; rather the only manner in which American and the

2

No. 1-08-2985

Department could have agreed to extend the limitations period was under the complementary provisions of sections 4 and 6 of the Illinois Retailers' Occupation Tax Act (ROTA) (35 ILCS 120/4, 6 (West 2006)), which was not done; and (4) the Department's denial of American's second refund claim did not deprive American of its right to due process of law. For the reasons that follow, we reverse.

## I. BACKGROUND

The record below reveals the following pertinent facts. American is an international airline corporation, incorporated in the State of Delaware, providing both passenger airline and freight carrier services to customers all over the world. American loads aviation fuel on its planes in Illinois flights to and from locations in other countries around the world. American does not pay use taxes to the person(s) from whom it purchases such fuel. Instead, it self-assesses use taxes on any fuel purchases and pays the Department directly on "the twentieth day after the close of each month."

American filed its tax return (*i.e.*, Illinois sales and use tax return form) for the period of June 2000 through November 2000 (hereinafter the relevant time period) paying the appropriate use tax for purchases of tangible personal property acquired during that time.

On October 3, 2003, American filed its original refund claim with the Department, *i.e.*, six separate amended sales and use tax return forms (hereinafter ST-1-X forms), claiming overpayment of the use tax during the relevant time period and seeking a refund in the amount of

3

No. 1-08-2985

$183,873.[1] On each of American's six ST-1-X forms, in the part of the form where a filer is asked to identify the reason why the filer is correcting its original tax return, and seeking a refund, American wrote:

> "According to IRS Ruling 2002-50, the IRS has a new interpretation of flights that qualify for international or foreign trade. Based on this new interpretation, we have more international flights. Therefore, we are requesting a refund of jet fuel paid on these additional flights."

American's ST-1-X forms were delivered to the Department on October 7, 2003, and the Department acknowledged its receipt to American in a letter dated November 4, 2003.

On January 1, 2004, the statue of limitations for filing refund claims for use taxes paid from July 1, 2000, through December 31, 2000, ran.[2]

---

[1]Specifically American sought the following refunds:

| Month | Refund Sought |
|---|---|
| June 2000 | $26,935 |
| July 2000 | $27,209 |
| August 2000 | $31,740 |
| September 2000 | $27,798 |
| October 2000 | $36,366 |
| November 2000 | $33,825 |
| Total Refund Sought | $183,873 |

[2]Section 21 of the UTA provides in pertinent apart that a claim "filed on and after July 1

The Department assigned auditor Phyllis Mondy to audit American's refund request, and she documented her audit in an audit history worksheet. According to this worksheet, Mondy received actual physical possession of America's ST-1-X forms on May 14, 2004. On September 20, 2004, Mondy met with American's tax specialist, Marie Arredondo, to begin the Department's audit of American's refund claim. At that meeting, Arredondo gave Mondy a copy of Ruling 2002-50 made by the federal Internal Revenue Service (IRS) (hereinafter IRS Ruling 2002-50)[3] as evidence supporting the refund claim. Arredondo also gave Mondy a schedule of fuel used on additional flights during July 2000 through December 2000 that American had not included in its original claim for refund and asked if Mondy could include the additional flights in the audit.

Mondy subsequently contacted the agency's Technical Review Department to determine whether IRS Revenue Ruling 2002-50 had any bearing on American's refund claim for its

but on or before December 31 ***, no amount of tax *** erroneously paid *** more than 3 years prior to such July 1 shall be credited or refunded." 35 ILCS 105/21 (West 2006).

[3]This ruling, attached to the record, apparently permits exemptions on fuel for air carriers involved in "foreign trade," but limits flights involved in "foreign trade" only to those flights delivering passengers or cargo abroad. See I.R.S. Rev. Rul. 2002-50, 2002-32 I.R.B. 292 ("an aircraft is 'actually engaged in foreign trade,' when it is transporting any person for hire between the United States and a foreign country*** [O]nce an aircraft is actually engaged in foreign trade, the aircraft remains so engaged even though it makes intermediate stops in the United States").

payment of the Illinois use tax. On November 3, 2004, Mondy received a response from the agency's Technical Review Department indicating that the refund claim must "follow Department regulations." On November 30, 2004, Mondy notified American that its refund claim would be denied because it did not follow Department regulations.

Mondy also consulted her supervisor, Tony Gonerka, about American's request to include additional flights in the audit. After receiving instruction from Gonerka, on January 19, 2005, Mondy informed Arredondo by e-mail that American must file new and amended ST-1-X forms in order to seek a refund for the additional flights not included in its initial refund claim. Monday's email specifically stated:

> "The claims filed for 7/00-12/00 have been returned to me for corrections. The additional information submitted to me for review has to be filed on ST-1-Xs. Please amend the ST-1-Xs filed requesting a refund for $183,873 and include the total amount you are requesting. Please contact me when the ST-1-X's are done. I will pick them up and mail them to Springfield for processing."

On April 20, 2005, Mondy telephoned Arredondo and again explained that American's refund claim would be denied because American did not base it on Illinois regulations. When Arredondo informed Mondy that "they [American] did follow Illinois regulations," Mondy agreed to meet Arredondo to discuss American's claim further.

On May 9, 2005, Mondy and Arredondo met and Arredondo gave Mondy a set of revised ST-1-Xs refund claim forms. This second refund claim sought a refund in the amount of

$701,932, *i.e.*, $518,059[4] for the newly identified flights and $183,873 for the flights previously

identified in American's original ST-1-X forms.  The amended forms again cited to IRS Ruling

2002-50 as the basis for the additional refunds, stating, as before:

"According to IRS Ruling 2002-50, the IRS has a new interpretation of flights that

qualify for international or foreign trade.  Based on this new interpretation, we have more

international flights.  Therefore, we are requesting a refund of jet fuel paid on these

additional flights."

However, in her worksheet, Mondy noted that upon receipt of the revised ST-1-X forms

Arredondo explained to her:

"the original exempt fuel did not include fuel used on flights that carried passengers

and/or cargo that didn't go all the way through (*i.e.* passenger didn't continue to

destination outside the [U]nited [S]tates, however, flight arrived at destination outside the

---

[4]This amount specifically included the following refunds:

| Month | Refund Sought |
|---|---|
| June 2000 | $97,693 |
| July 2000 | $114,893 |
| August 2000 | $113,874 |
| September 2000 | $125,985 |
| October 2000 | $143,008 |
| November 2000 | $106,479 |
| Total Refund Sought | $701,932 |

[U]nited [S]tates).”

Mondy indicated that upon receipt of the revised ST-1-X forms, she performed her audit by, *inter alia*, examining “schedules reflecting additional fuel used on international flights,” a report detailing the “month/year, destination airport, flight number, flight date, aircraft tail no., city pair [from] which gallons [were] taken from, [and] all airports [a] flight flew to,” and the “flight operation report which contained fuel gallons of city pair.”

On May 11, 2005, Mondy completed her audit and sent American a letter indicating that the second refund claim had been approved. That letter stated in pertinent part:

“The claim for refund requested for tax overpaid in the amount of $701,932 has been

approved. The claim was filed 10/3/03 for the tax period 7/00 through 12/00.”

On May 12, 2005, Mondy turned her audit in for review.

Subsequently, on June 15, 2005, Mondy’s new supervisor, Roger Koss, asked Mondy if she had received “a waiver from the taxpayer.”[5] Mondy replied that she had not because she believed that a waiver was unnecessary, since the second refund claim “was for the same issue (use tax paid in error on exempt fuel).” Mondy informed Koss that her previous supervisor,

_____

[5]The Department contends, and American does not dispute, that this reference in the record refers to a waiver of the statute of limitations, which, as shall be more fully discussed below, is permitted under section 6 of the ROTA (35 ILCS 120/6 (West 2006)), incorporated by the UTA (see 35 ILCS 105/19 (West 2006)), and which permits the waiver of the statute of limitations to be tolled by a written agreement between the parties, so long as the agreement is entered into before the expiration of the statute’s limitation period.

Gonerka had instructed her to have American file a "revised" ST-1-X form including additional refund requests. Koss told Mondy that American could not increase its claim because the second refund claim was filed beyond the statute of limitations and that, accordingly, Springfield would return the audit to Mondy for "corrections."

On August 19, 2005, the Department sent American a notice of proposed claim denial (form EDA-125) that approved the original $183,873 refund claim but denied the remaining $518,059 requested. On September 21, 2005, the Department sent American a notice of tentative denial of claim for use tax (form MTC-29), explaining that the amended refund amount was denied because "[t]he claim was filed outside the statutory period."[6]

American requested review of the Department's decision before the ALJ and such a hearing was held on August 9, 2006. At that hearing, the parties agreed that the issue to be resolved was whether its amendment to its timely filed refund claim is deemed to be filed within the statute of limitations under section 21 of the UTA (35 ILCS 105/21 (West 2006)). At the hearing, American argued that (1) the additional refund that it sought was not filed outside of the statute of limitations because it was a mere amendment to the original refund claim, as it did not raise any new factual or legal issues, but merely sought a larger dollar amount for the same type

---

[6]We note that although there is some confusion as to what amount of refund American was actually denied based upon the language of the Notice of Tentative Denial of Claim for Use Tax, which states that American is denied the refund amount of $701,932, the record reveals, and the parties do not contest, that American did in fact receive a refund of $183,873, sought in its initial refund claim, and was merely denied the remaining $518,059 requested.

of exemptions; (2) that the initial refund claim was a "protective claim" under the holding of this appellate court in Dow Chemical Co., 224 Ill. App. 3d 263, 586 N.E.2d 516, permitting the tolling of the statute of limitations for any amendment thereunder; (3) that alternatively the second refund claim was not time-barred because it related back to the initial refund claim pursuant to section 2-616(b) of the Illinois Code of Civil Procedure (Code of Civil Procedure) (735 ILCS 5/2-616(b) (West 2006)); (4) that denying American's second refund claim would constitute bad public policy and deny American its right to due process of law.

On January 5, 2007, the ALJ affirmed the Department's denial of American's second refund claim and issued a recommendation for disposition, advising the Director of the Department to finalize the Department's proposed denial as issued. The Director of the Department accepted the ALJ's recommendation on January 26, 2007. Consequently, on February 6, 2007, the Department issued a final determination of claim (form LTR-206) informing American that it was entitled solely to a refund of $183,873, and that the remaining refund sought was denied.

On March 13, 2007, American filed a complaint with the circuit court seeking judicial review of the final determination of the Director of the Department. American made the same arguments it had raised in the administrative proceedings before the circuit court. In addition, American argued that the Department's audit and determination of the amount of refund under section 20 of the UTA (35 ILCS 105/20 (West 2006)) was not limited by the statute of limitations provision of section 21 of the UTA (35 ILCS 105/21 (West 2006)) because section 20 does not explicitly incorporate section 21, and because if did, the Department could defeat any

claim for refund simply by delaying its audit determinations.

On September 23, 2008, the circuit court reversed the decision of the Department, finding that American filed its request within the statutory period, and ordering the Department to issue refunds of the use tax to American in the amount of $518,059 with applicable interest as required by the Uniform Penalty and Interest Act (35 ILCS 735/3-5 (West 2002)). The Department now appeals.

## II. ANALYSIS

On appeal, the Department contends that the circuit court erred when it reversed the decision of the ALJ and found that American's second refund claim was not time-barred. The Department makes several arguments. First, it contends that American's second refund claim was time-barred by the statute of limitations set forth in section 21 of UTA (35 ILCS 105/21 (West 2006)) because that second refund claim was not an amendment but rather a separate claim, based upon different transactions with different factual and legal predicates. Second, the Department contends that American's original refund claim was not a "protective claim," as defined under the holding of this appellate court in Dow Chemical Co., 224 Ill. App. 3d 263, 586 N.E.2d 519, so as to permit the tolling of the statute of limitations for an amendment to such a claim. Third, the Department contends that the relation-back doctrine does not apply to proceedings under the UTA, so as to permit late amendment to a timely filed claim, and that instead the only manner in which American and the Department could have agreed to extend the limitations period was under the provisions of sections 4 and 6 of the ROTA (35 ILCS 120/4, 6 (West 2006)), which was not done. The Department finally contends that its denial of

11

American's second refund claim did not deprive American of its right to due process of law. For the reasons that follow, we agree, and address each of the parties' contentions in turn.

1. Standard of Review

Before addressing the merits, however, we first address the applicable standard of review. Our supreme court has held that in administrative cases, such as this one, the appellate court reviews the decision of the administrative agency, not the determination of the circuit court. Wade v. City of North Chicago Police Pension Board., 226 Ill. 2d 485, 504, 877 N.E.2d 1101, 1112 (2007). In reviewing the decision of the administrative agency, " '[t]he applicable standard of review depends upon whether the question presented is one of fact, one of law, or a mixed question of fact and law.' " Cinkus v. Village of Stickney Municipal Officers Electoral Board., 228 Ill. 2d 200, 210, 886 N.E.2d 1011, 1018 (2008), quoting American Federation of State, County & Municipal Employees, Council 31 v. Illinois State Labor Relations Board, State Panel., 216 Ill. 2d 569, 577, 839 N.E.2d 479 (2005).

An administrative agency's findings on questions of fact are deemed to be *prima facie* true and correct. 735 ILCS 5/3-110 (West 2006); see also Cinkus, 228 Ill. 2d at 210, 886 N.E.2d at 1018. In examining an administrative agency's factual findings, a reviewing court does not weigh the evidence or substitute its judgment for that of the agency. Cinkus, 228 Ill. 2d at 210, 886 N.E.2d at 1018. Rather, the reviewing court is limited to ascertaining whether the agency's factual findings are contrary to the manifest weight of the evidence. See Cinkus, 228 Ill. 2d at 210, 886 N.E.2d at 1018; City of Belvidere v. Illinois State Labor Relations Board, 181 Ill. 2d 191, 204, 692 N.E.2d 295, 302 (1998); see also Illinois Fraternal Order of Police Labor Council

v. Illinois Local Labor Relations Board, 319 Ill. App. 3d 729, 736, 745 N.E.2d 647, 653 (2001) ("[T]he decision is against the manifest weight of the evidence only if the opposite conclusion is clearly evident"). An agency's conclusions of law, however, are not entitled to the same deference, and we review them *de novo*. Illinois Fraternal Order of Police Labor Council, 319 Ill. App. 3d at 736, 745 N.E.2d at 653; see also Cinkus, 228 Ill. 2d at 210, 886 N.E.2d at 1018 (an agency's decision on a question of law," such as an agency's interpretation of the meaning of a statute, "is not binding on a reviewing court"; rather the court's review is independent and not deferential").

If the question presented for review is one of mixed law and fact, then yet a third standard applies, and we review the agency's decision to determine if it was clearly erroneous. City of Belvidere, 181 Ill. 2d at 205, 692 N.E.2d at 302; see also AFM Messenger Service, Inc., v. Department of Employment Security, 198 Ill. 2d 380, 395, 763 N.E.2d 272, 282 (2001). Mixed questions of fact and law " 'are "questions in which the historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the statutory standard, or to put it another way, whether the rule of law as applied to the established facts is or is not violated." ' " Cinkus, 228 Ill. 2d at 211, 886 N.E.2d at 1018, quoting American Federation of State, County & Municipal Employees, Council 31, 216 Ill. 2d at 577, 839 N.E.2d 479, quoting Pullman-Standard v. Swint, 456 U. S. 273, 289, n. 19, 72 L. Ed. 2d 66, 80, n. 19, 102 S. Ct. 1781, 1790, n. 19 (1982); see also City of Belvidere, 181 Ill. 2d at 204, 692 N.E.2d at 302 (holding that an examination of the legal effect of a given state of facts, even if those facts are undisputed, involves a mixed question of fact and law with a standard of review of clearly

13

erroneous). Under the clearly erroneous standard of review an agency's decision will be reversed only where "the reviewing court, on the entire record, is 'left with the definite and firm conviction that a mistake has been committed.' " AFM Messenger Service, 198 Ill. 2d at 395, 763 N.E.2d at 282, quoting United States v. United States Gypsum Co., 333 U.S. 364, 395, 92 L. Ed. 746, 766, 68 S. Ct. 525, 542 (1948).

In the present case, the Department contends that our review involves a mixed question of law and fact and that therefore the clearly erroneous standard should apply. American, on the other hand, contends that the issue at hand is purely a legal one and that therefore *de novo* review is appropriate.

Although the parties do not overtly dispute the Department's factual findings, but formulate their claim as a question of determining the applicability of the statute of limitations articulated in section 21 of the UTA (35 ILCS 105/21 (West 2006)) to filing of "amended" refund claims, the record reveals that in deciding the applicability of the statute of limitations, it was necessary for the reviewing agency to first determine the substance of the two refund claims filed by American to determine whether they were similar enough so that the second claim could constitute a mere amendment of the first. Accordingly, we too must first look to the facts in the record to determine the substance of the two claims, and in doing so, as articulated above, must defer to the findings of the Department, reviewing its determination under a manifest weight of the evidence standard. Cinkus, 228 Ill. 2d at 210, 886 N.E.2d at 1018.

With respect to the ultimate issue of the applicability of the statute of limitations, or in the alternative the applicability of the relation-back doctrine in section 2-616(b) of the Code of

14

No. 1-08-2985

Civil Procedure (735 ILCS 5/2-616(b) (West 2006)) to the provisions of the UTA, we agree with

American that the issue is purely a legal one, involving statutory interpretation, and that therefore

*de novo* review is appropriate. See W.L. Miller Co. v. Zehnder, 315 Ill. App. 3d 799, 805, 734

N.E.2d 502, 506 (2000) (holding that *de novo* was the proper standard of review in examining

the decision of the Director of the Department of Revenue to determine whether a taxpayer's

claim for refund of use taxes paid in a certain year was barred by the three-year statute of

limitations promulgated by section 21 of the UTA (35 ILCS 105/21 (West 2000))); see also First

Baptist Church v. Toll Highway Authority, 301 Ill. App. 3d 533, 540, 703 N.E.2d 978, 983

(1988) ("The application of statutes of limitations is a question of law that is evaluated according

to a *de novo* standard of review"); *c.f.*, Porter v. Decatur Memorial Hospital, 227 Ill. 2d 343, 353,

882 N.E.2d 583, 588 (2008) (holding that in reviewing whether a new claim in a party's second

amended complaint (in a civil proceeding before the circuit court) related back to the original

complaint so as to avoid the affirmative matter of the bar of the statute of limitations, the proper

standard of review was *de novo*, rather than clearly erroneous)).

Contrary to the Department's contention, this issue does not require us to determine

whether a rule of law (the UTA's statue of limitations for filing of refund claims) as applied to

the established facts (American's second refund claim) has been violated. Rather, our analysis

centers on determining whether the relevant provisions of the UTA and the complementary

ROTA, or alternatively the relation-back doctrine articulated in section 2-616(b) the Code of

Civil Procedure (735 ILCS 5/2-616(b) (West 2006)), permit amendments of refund claims to be

filed outside the UTA's limitation period (35 ILCS 105/21 (West 2006)), and if so, under what

15

circumstances. This is purely a question of statutory interpretation, which we review *de novo*.

## 2. Illinois Use Tax Act

Turning to the merits, we begin our analysis by addressing the relevant statutory provisions. In Illinois, the taxation scheme commonly known as the "sales tax" is comprised of two complementary statutes, the UTA (35 ILCS 105/1 *et seq.* (West 2006)) and the ROTA (35 ILCS 120/1 *et seq.* (West 2006)). Hagerty v. General Motors Corp., 59 Ill. 2d 52, 54-55, 319 N.E.2d 5, 6 (1974); Brown v. Zehnder, 295 Ill. App. 3d 1031, 1034, 693 N.E.2d 1255,1258-59 (1998). Under the ROTA, Illinois retailers are required to remit to the State a percentage of the gross receipts of every retail sale of tangible personal property. 35 ILCS 120/2 (West 2006); Weber-Stephen Products, Inc. v. Department of Revenue, 324 Ill. App. 3d 893, 898, 756 N.E.2d 321, 324-25 (2001). The use tax, which is central to this appeal, "is assessed in the same way and on the same transactions, but *** imposes a tax on the purchaser-user of the property for the privilege of using this property in Illinois." Weber-Stephen Products, Inc., 324 Ill. App. 3d at 898, 756 N.E.2d at 324-25; see also 35 ILCS 105/3 (West 2006) ("A [use] tax is imposed upon the privilege of using in this State tangible personal property purchased at retail from a retailer"). Although the sales tax is generally collected from the retailer, which includes it in the price of his merchandise, where the purchaser does not pay the retail tax to the retailer, the purchaser-user is required to self-assess the use tax and remit it directly to the Department in lieu of payment at the time of sale to the retailer. See American River Transportation Co. v. Bower, 351 Ill. App. 3d 208, 210, 813 N.E.2d 1090, 1092 (2004), citing Weber-Stephen Products, Inc., 324 Ill. App. 3d at 898, 756 N.E.2d at 324-25; see also 35 ILCS 105/3-45, 10 (West 2006). In doing so, the

purchaser must file its tax return "on form[s] prescribed by the Department." 35 ILCS 105/10 (West 2006).

Under the UTA, unless exempted, all items of tangible personal property used in Illinois are subject to tax. 35 ILCS 105/2 (West 2006). Although, this generally includes the use of fuel, section 3-5(12) of the UTA specifically exempts fuel used by an airline on international flights:

"Fuel and petroleum products sold to or used by an air common carrier, certified by the carrier to be used for consumption, shipment, or storage in the conduct of its business as an air common carrier, for a flight destined for or returning from a location or locations outside the United States without regard to previous or subsequent domestic stopovers." 35 ILCS 105/3-5(12) (West 2006).

Where, upon payment of the use tax, it appears that the amount paid has been paid in error, the UTA permits the taxpayer to seek a refund, by filing a claim for refund with the Department. As section 19 states in pertinent part:

"If it shall appear that an amount of tax or penalty or interest has been paid in error hereunder to the Department by a purchaser *** whether such amount be paid through a mistake of fact or an error of law, such purchaser may file a claim for credit or refund with the Department in accordance with Sections 6, 6a, 6b, and 6c of the Retailers' Occupation Tax Act.

* * *

Any claim filed hereunder shall be filed upon a form prescribed and furnished by the Department." 35 ILCS 105/19 (West 2009).

17

No. 1-08-2985

As shall be more fully discussed below, sections 6 and 6a of the ROTA, referenced above in section 19 of the UTA specify the procedures that a taxpayer must comply with in filing a refund claim. See 35 ILCS 120/6, 6a (West 2006).

Under the UTA all refund claims must be filed by the taxpayer within the three-year statute of limitations set forth in section 21 of the UTA, which states in pertinent part:

"As to any claim for credit or refund filed with the Department on and after January 1 but on or before June 30 of any given year, no amount of tax *** erroneously paid *** more than 3 years prior to such January 1 shall be credited or refunded, and as to any such claim filed on and after July 1 but on or before December 31 of any given year, no amount of tax *** erroneously paid *** more than 3 years prior to such July 1 shall be credited or refunded." 35 ILCS 105/21 (West 2006).

The statute further provides that once a refund claim is filed with the Department, the Department is authorized to make a final determination of the amount that will be refunded. As Section 20 of The UTA provides:

"As soon as practicable after a claim for credit or refund is filed, the Department shall examine the same and determine the amount of credit or refund to which the claimant *** is entitled and shall, by its Notice of Tentative Determination of Claim, notify the claimant *** of such determination, which determination shall be prima facie correct. Proof of such determination by the Department may be made at any hearing before the Department or in any legal proceeding by a reproduced copy of the Department's record relating thereto, in the name of the Department under the certificate

18

of the Director of Revenue. Such reproduced copy shall, without further proof, be admitted into evidence before the Department or in any legal proceeding and shall be prima facie proof of the correctness of the Department's determination, as shown therein.

\* \* \*

\*\*\* Claims for credit or refund hereunder must be filed with and initially determined by the Department, the remedy herein provided being exclusive; and no court shall have jurisdiction to determine the merits of any claim except upon review as provided in this Act." 35 ILCS 105/20 (West 2006).[7]

2.  Undisputed Facts

In the present case, it is undisputed that American self-assessed a use tax on fuel purchases of airline fuel for the period of July 2000 to December 2000 and paid the use tax directly to the Department. It is further undisputed that American subsequently sought a partial refund of that use tax, by initially filing a refund claim on ST-X-1 forms within the mandatory three year statute of limitations for the amount of $183,873 paid for certain exempt international

---

[7]We note that section 6b of the ROTA and section 20 of the UTA are nearly identical in providing that the Department shall "as soon as practicable" determine the amount of refund to which a claimant is entitled. See 35 ILCS 120/6b (West 2006) ("As soon as practicable after a claim for credit or refund is filed, the Department shall examine the same and determine the amount of credit or refund to which the claimant \*\*\* is entitled and shall, by its Notice of Tentative Determination of Claim, notify the claimant or his legal representative of such determination, which determination shall be prima facie correct").

flights in the aforementioned time period. The record further reveals that during the Department's audit of this refund claim, and after the statute of limitations for filing a refund claim had already run (on December 31, 2003), American identified "additional international flights" that were not included in its original refund claim and brought them to the attention of the Department's auditor asking if they could be added to the original claim. Upon instruction from the Department's auditor, American then filed its second refund claim, amending the dollar amounts on the same ST-X-1 forms (indicated by the Department) used in its original refund claim, but now requesting a total refund in the amount of $701,932 (including the original $183,873 refund amount). As noted above, the Department initially approved American's second refund claim, but after a new supervisor was appointed to oversee Mondy's audit, it was determined that American had sought its second refund claim outside of the statute of limitations, and American was informed that the second refund request would be denied. American appealed the Department's decision before the ALJ, contending that its second claim was merely an amendment to the initial claim and that therefore the filing had not occurred outside of the statute of limitations. The ALJ disagreed and denied American's second claim. After American appealed to the circuit court, however, the Department's decision was reversed.

### 3. The Substance of the Two Refund Claims

The Department now contends that American's second claim was a separate claim, because it was based on different legal and factual predicates than the first claim, so that its filing after the limitation period expired was barred. Specifically, the Department contends that while the first refund claim was based on fuel exemptions for flights involved in "foreign trade" as

defined by the then-recent IRS Revenue Ruling 2002-50, the second claim was based upon the international flight fuel exemption articulated in section 3-5(12) of the UTA (see 35 ILCS 105/3-5(12) (West 2006)).

American on the other hand contends that the second claim was merely an amendment to the original claim and that the timely filing of the original claim therefore tolled the statute of limitations. Specifically, American contends that the second claim concerned the same exemption, on the same tax, for the same time period as the original claim, and that the only change made was the amount of refund sought. We disagree.

We first note that the raw record submitted by the parties to the ALJ is muddled as to whether there was a difference in the nature of the flights as between the two successive claims. According to the ALJ, the first claim for refund sought fuel exemptions for planes that not only ultimately landed in a foreign destination but carried their passengers and cargo until they landed at the foreign site. On the other hand, the second claim for refund was for planes that landed to and from international destinations but where passengers could have been disembarked domestically before the plane landed at an international airport. It is unclear from the raw record itself whether the first and second claims in actuality reflected the disparity which the ALJ attributed to them.

American claims that both its refund claims were premised upon IRS Ruling 2002-50, which defined "foreign trade" for purposes of certain IRS exemptions extended to "foreign trade" (not involved here), but which required that to be eligible as a plane engaged in "foreign trade" both passengers and cargo had to be disembarked in foreign territory. American contends

that both its first and second claims for refund were for planes that met the IRS's designation. In support of this contention, American points out that in filing its first and second refund claims, in the part of the form where the taxpayer is asked to identify the reason for seeking the refund, American employed identical language in characterizing its claim, stating both times:

"According to IRS Ruling 2002-50, the IRS has a new interpretation of flights that qualify for international or foreign trade. Based on this new interpretation, we have more international flights. Therefore, we are requesting a refund of jet fuel paid on these additional flights."

American's contention, however, is contravened by the audit history worksheet of the Department's auditor, Mondy, which reveals that American's second refund claim was broader, seeking a refund for all international flights irregardless of whether those flights carried passengers or cargo to international destinations. Specifically, Mondy's audit history worksheet, attached as part of the record, states that upon receiving the second refund claim from American's tax specialist Arredondo, Arredondo explained that the reason for the additional flights American sought to include in its original refund claim was that the original "exempt fuel did not include fuel used on flights that carried passengers and/or cargo that didn't go all the way through (*i.e.*, passenger didn't continue to destination outside the United Sates, however flight arrived at destination outside the United States)."

Based upon its review of the record, the ALJ found that the second claim was not premised upon the same legal predicate as the first. According to the ALJ, American's original refund claim was predicated upon the definition given to "foreign trade" by the IRS in its ruling

on its own fuel exemptions, which limited "foreign trade" to those international flights delivering passengers or cargo abroad, but excluded flights which landed abroad where passengers and cargo were disembarked domestically. See I.R.S. Rev. Rul. 2002-50, 2002-32 I.R.B. 292 ("an aircraft is 'actually engaged in foreign trade,' when it is transporting any person for hire between the United States and a foreign country"). The ALJ further found that American's second claim was based upon section 3-5(12) of the UTA (35 ILCS 105/3-5(12) (West 2006)), which permits exemptions on all international flights, including those that land on international soil without passengers or cargo. See 35 ILCS 105/3-5(12) (West 2006) ( "[f]uel and petroleum products sold to or used by an air common carrier *** for a flight destined for or returning from a location or locations outside the United States without regard to previous or subsequent domestic stopovers"). As the ALJ explained, American's second refund claim was "based on American's subsequent determination that the Illinois use tax exemption for fuel loaded onto international flights [(pursuant to section 3-5(12) of the UTA)] might be broader than the federal exemption described in [IRS] Ruling 2002-50."

After a review of the record, we find nothing manifestly erroneous in this determination by the ALJ. As already noted above, it is not a reviewing court's function to reconsider the evidence presented to an administrative agency or to make a new determination of the fact. Environmental Protection Agency. v. Pollution Control Board, 308 Ill. App. 3d 741, 749, 721 N.E.2d 723, 729 (1999). Rather, an administrative agency's findings on questions of fact are deemed to be *prima facie* true (735 ILCS 5/3-110 (West 2006)), and a reviewing court will reverse the agency's factual determinations only if it concludes that they were contrary to the

23

manifest weight of the evidence. See <u>Cinkus</u>, 228 Ill. 2d at 210, 886 N.E.2d at 1018; <u>City of Belvidere</u>, 181 Ill. 2d at 204, 692 N.E.2d at 302; see also <u>Illinois Fraternal Order of Police Labor Council</u>, 319 Ill. App. 3d at 736, 745 N.E.2d at 653 ("[T]he decision is against the manifest weight of the evidence only if the opposite conclusion is clearly evident").

Accepting the ALJ's conclusion that there were two different legal bases underlying American's first and second claims for refund, we must next determine whether filing of the second claim outside of the statutory period should have been barred.

While the parties have not submitted any case on point in all aspects, the case of <u>W.L. Miller Co.</u>, 315 Ill. App. 3d at 805, 734 N.E.2d at 506, is helpful. While not fully identical in its facts, it is nevertheless persuasive in its analysis.

In <u>W.L. Miller Co.</u>, our appellate court held that where claims for tax credit under the UTA are based on different, albeit interrelated, legal principles, they are distinct claims and each must be filed within the prescribed statute of limitations under section 21 of the UTA (35 ILCS 105/21 (West 2006)). In that case, the taxpayer mailed its payment of use tax to the Department but enclosed with that payment a letter of protest explaining why it disagreed with the Department's interpretation of the "rolling stock" exemption and asking the Department to send it the necessary forms for filing a claim for credit. <u>W.L. Miller Co.</u>, 315 Il. App. 3d at 801, 734 N.E.2d at 504. Subsequently, the taxpayer filed a timely UTA credit claim for purchases of nine vehicles that were exempt as "rolling stock." <u>W.L. Miller Co.</u>, 315 Il. App. 3d at 801, 734 N.E.2d at 504. Subsequently, after the three-year limitations period for filing credit claims had run, the taxpayer sought to "amend" its claim to include, *inter alia*, a credit on purchases of

"asphalt machinery" and "vehicle parts." W.L. Miller Co., 315 Il. App. 3d at 801, 734 N.E.2d at

504. Because under the Department's regulation, both "rolling stock" vehicles and parts attached

to them were exempt, the taxpayer argued that the second claim pertained to vehicle parts

attached to exempt vehicles and did nothing more than change the dollar amount of the refund

claimed. W.L. Miller Co., 315 Il. App. 3d at 805, 734 N.E.2d at 506. The Department

disagreed, contending that the taxpayer's second claim was distinct from its first claim, and

could not be considered a mere amendment to the first claim, because the second claim sought

"an additional credit amount, on different property, requiring a different factual basis." W.L.

Miller Co., 315 Ill. App. 3d at 805, 734 N.E.2d at 506. The appellate court agreed with the

Department, holding:

> "The factual predicate of Miller's original claim pertained to the use of Miller's
>
> vehicles on a for-hire basis in interstate commerce. Ill. Rev. Stat. 1991, ch. 120, par.
>
> 439.3-55(b) (now 35 ILCS 105/3-55(b) (West 1998)). The factual predicate for Miller's
>
> second claim pertains to whether the claimed parts are placed on and have become part of
>
> an exempt vehicle. The two claims are based on different, albeit interrelated, legal bases.
>
> We therefore conclude that Miller's second claim constitutes a distinct claim for credit
>
> and the ALJ correctly determined that it should have been filed within the three-year
>
> statute of limitations period." W.L. Miller Co., 315 Il. App. 3d at 805, 734 N.E.2d at
>
> 506.

Applying the analysis of W.L. Miller Co., we would conclude that in the present case

American's second claim was distinct from its originally filed claim and therefore barred by the

statue of limitations articulated under section 21 of the UTA (35 ILCS 105/21 (West 2006)).

We note that the decision of our appellate court in <u>Dow Chemical Co.</u>, 224 Ill. App. 3d at 268, 586 N.E.2d at 519, goes even further than the holding in <u>W.L. Miller Co.</u>. As shall be more fully discussed below, the court in <u>Dow Chemical Co.</u> held that, even where a taxpayer's claim for a refund of income taxes was based upon a change in the agency's method of computation, which occurred subsequent to the taxpayer's initial timely filed protest to payment of such taxes and during the Department's audit, the taxpayer was nonetheless time-barred from obtaining any refund because no refund request was filed within the prescribed three-year statute of limitations for such refund claims. <u>Dow Chemical Co.</u>, 224 Ill. App. 3d at 268, 586 N.E.2d at 519. The court in that case specifically held that, in order to toll the limitations period, a taxpayer was required to timely file the appropriate refund claim or in the very least seek an extension of time in order to do so. <u>Dow Chemical Co.</u>, 224 Ill. App. 3d at 268, 586 N.E.2d at 519.

This result falls well within the parameters of the statute itself, which mandates that no change or amendment is permitted in filing a refund claim once the statute of limitations runs absent a written agreement between the parties.

As previously noted, the filing of claims for refund of overpayment on Illinois use tax is governed by sections 19 through 22 of the UTA (35 ILCS 105/19 through 22 (West 2006)), and sections 4, 6 and 6a of the ROTA (35 ILCS 120/4, 6, 6a (West 2006)). Section 19 of the UTA provides that "[i]f it shall appear that an amount of tax *** has been paid in error hereunder to the Department by a purchaser *** through a mistake of fact or an error of law," a taxpayer may file a refund claim with the Department "in accordance with Sections 6, 6a, 6b, and 6c of the

No. 1-08-2985

Retailers' Occupation Tax Act."  35 ILCS 105/19 (West 2006).

Sections 6 of the ROTA prohibits the refund of any amount sought by a taxpayer outside of the statute of limitations absent an agreement between the parties to extend the limitation period.  See 35 ILCS 120/6 (West 2006).  Section 6 states in pertinent part:

"If it appears, after claim therefor filed with the Department, that an amount of tax *** has been paid which was not due under this Act, whether as the result of a mistake of fact or an error of law, except as hereinafter provided, then the Department shall issue a *** refund to the person who made the erroneous payment. ***  However, as to any claim for *** refund filed with the Department on and after each January 1 and July 1 *no amount* of tax *** erroneously paid *** more than 3 years prior to such January 1 and July 1, respectively, shall be credited or refunded, *except that if both the Department and the taxpayer have agreed to an extension of time to issue a notice of tax liability as provided in Section 4 of this Act, such claim may be filed at any time prior to the expiration of the period agreed upon*." (Emphasis added.)  35 ILCS 120/6 (West 2006).

Section 4 of ROTA provides that such an agreement to extend the limitations period must be made in writing, and that it must be entered into "before the expiration of the time prescribed in this Section for the issuance of a notice of tax liability."  See 35 ILCS 120/4 (West 2006).  As section 4 states in pertinent part:

"Except in case of a fraudulent return, or in the case of an amended return (where a notice of tax liability may be issued on or after each January 1 and July 1 for an amended return filed not more than 3 years prior to such January 1 or July 1,

27

respectively), no notice of tax liability shall be issued on and after each January 1 and July 1 covering gross receipts received during any month or period of time more than 3 years prior to such January 1 and July 1, respectively. If, *before the expiration of the time prescribed in this Section for the issuance of a notice of tax liability*, both the Department and the taxpayer have *consented in writing* to its issuance after such time, such notice may be issued at any time prior to the expiration of the period agreed upon. The period so agreed upon may be extended by subsequent agreements in writing made before the expiration of the period previously agreed upon." (Emphasis added.) 35 ILCS 120/4 (West 2006).

In addition, section 6a of the ROTA (35 ILCS 120/6a (West 2006)), which outlines the formal prerequisites for establishing a claim, arguably treats any claim for a dollar amount as an independent claim, thereby making it independently subject to the limitations period articulated in section 21 of the UTA (35 ILCS 105/21 (West 2006)). Section 6a provides in pertinent part:

"Claims for credit or refund shall be prepared and filed upon forms provided by the Department. Each claim shall state: (1) The name and principal business address of the claimant; (2) the period covered by the claim; (3) the total amount of credit or refund claimed, giving in detail the net amount of taxable receipts reported each month or other return period used by the claimant as the basis for filing returns in the period covered by the claim; (4) the total amount of tax paid for each return period; (5) receipts upon which tax liability is admitted for each return period; (6) the amount of receipts on which credit or refund is claimed for each return period; (7) the tax due for each return period as

28

corrected; (8) the amount of credit or refund claimed for each return period; (9) reason or reasons why the amount, for which the claim is filed, is alleged to have been paid in error; (10) a list of the evidence (documentary or otherwise) which the claimant has available to establish his compliance with Section 6 as to bearing the burden of the tax for which he seeks credit or refund; (11) payments or parts thereof (if any) included in the claim and paid by the claimant under protest; (12) sufficient information to identify any suit which involves this Act, and to which the claimant is a party, and (13) such other information as the Department may reasonably require." 35 ILCS 120/6a (West 2006).

In the aforementioned itemization the amount claimed is integral to defining a claim. See 35 ILCS 120/6a (West 2006). This perspective is manifested throughout the relevant ROTA provisions dealing with refund claims. For example, sections 6 and 6a both provide that in properly filing a refund claim, the taxpayer bears the burden of proof in establishing the exact *amount* of refund sought. See 35 ILCS 120/6, 6a (West 2006). Specifically, section 6a states that one of the requisites of a "refund claim" is "a list of the evidence (documentary or otherwise) which the claimant has available to establish his compliance with Section 6 as to *bearing the burden* of the tax for which he seeks credit or refund." (Emphasis added.) 35 ILCS 120/6a (West 2006). Section 6 further provides that only the correct portion of the amount of tax for which a claim as been filed may be refunded, and the Department may not refund more tax than the amount sought, where no claim was filed for additional taxes. See 35 ILCS 120/6 (West 2006) ("[n]o credit may be allowed or refund made for any *amount* paid by or collected from any

claimant unless it appears *** that the claimant *bore the burden* of such *amount*" (emphasis added)).

Accordingly, when reading the aforementioned provisions in context, it becomes apparent that each time an amount is claimed, it is subject to the operative statute of limitations, so that even a so-called amended claim that seeks an additional amount, albeit for the same type of exemption, would have to independently satisfy the statute of limitations. See Dow Chemical Co., 224 Ill. App. 3d at 266, 586 N.E.2d at 519 (in interpreting a statute "each part of a statute [is read] in light of every other provision, so that the entire statute is construed to produce a harmonious whole"); see also In re Estate of Lieberman, 391 Ill. App. 3d 882, 887, 909 N.E.2d 915, 919 (2009) ("[w]e must not consider words and phrases in isolation; rather, we must interpret words and phrases in light of other relevant provisions and interpret the statute as a whole"); Cinkus, 228 Ill. App. 3d at 216-17, 886 N.E.2d at 1021-22 ("[t]he statute should be evaluated as a whole, with each provision construed in connection with every other section"); see also Cook v. Department of Revenue, 281 Ill. App. 3d 171, 175, 666 N.E.2d 893, 896 (1996) (holding that as to UTA and ROTA "[the legislative] intent is derived from the language of the statute, evaluated as a whole, with each provision construed in connection with every other section").

While arguably the provisions of the statute lend themselves to this narrow construction, we, in deciding under the facts of this case need not carry that interpretation to its fullest ramifications, as here, the ALJ already determined that the two refund claims were separate claims differing not simply in the amount but also in the nature of the flights for which each

No. 1-08-2985

successive claim sought relief.

Accordingly, we merely hold that since American's second refund claim was premised upon a different legal principle than the first, and involved different types of international flights, section 21 of the UTA barred American's second refund claim. See 35 ILCS 105/21 (West 2006).

American nevertheless contends that even under these facts, the limitations period articulated in section 21 of the UTA (35 ILCS 105/21 (West 2006)) should not have been applicable. Specifically, American points out that section 20 of the UTA, which governs the Department's audit of refund claims and permits the Department to determine the amount of refund "[a]s soon as practicable after *** a claim is filed" (35 ILCS 105/20 (West 2006)), does not itself provide any time limitation on the Department's payment that would tie it to the limitation period in section 21 of the UTA (35 ILCS 105/21 (West 2006)). American contends that since the Department could wait beyond the three-year limitations period articulated in section 21 of the UTA (35 ILCS 105/21 (West 2006)) to pay out the refund, a taxpayer, such as American, should also have been permitted to recover on any new claim filed while the audit was ongoing and the final payment by the Department had not been made. This argument is a *non sequitur*.

It is apparent that section 20 of the UTA deals only with the Department's obligation to satisfy claims previously made and gives the Department the latitude to pay out the refund whenever it is expedient or practicable but in no way extends the time frame for a taxpayer to file a refund claim as delimited under section 21. See 35 ILCS 105/20 (West 2006). The statute

31

requires the Department to act with reasonable diligence. By no stretch of the imagination could this requirement modify the obligation of the taxpayer to file his claim within a statutory time deadline.

## 5. The Relation-back Doctrine

American nevertheless argues that, even if its second claim falls within the time bar of section 21 of the UTA (35 ILCS 105/21 (West 2006)), the relation-back doctrine articulated in section 2-616(b) of the Code of Civil Procedure (735 ILCS 5/2-616(b) (West 2006)) trumps the statutory provisions of the UTA. Section 2-616(b) of the Code of Civil Procedure provides that a cause of action set up in an amended pleading shall not be time-barred if: (1) the original pleading was timely filed and (2) the cause of action at issue "grew out of the same transaction or occurrence set up in the original pleading, even though the original pleading was defective in that it failed to allege the performance of some act or the existence of some fact or some other matter which is a necessary condition precedent to the right of recovery or defense asserted." 735 ILCS 5/2-616(b) (West 2006); see Zeh v. Wheeler, 111 Ill. 2d 266, 270-71, 489 N.E.2d 1342, 1344 (1986). Under section 2-616(b) of the Code of Civil Procedure, such an amendment would relate back to the date of the original, timely filed, pleading for the purpose of preserving the cause of action. 735 ILCS 5/2-616(b) (West 2006). The rationale behind the relation-back doctrine is that if the amended pleading implicates the same transaction or occurrence set up in the original pleading, such that the defendant's attention was directed in a timely fashion to the facts forming the basis of the claim asserted against it, then the defendant has not been prejudiced. Porter, 227 Ill. 2d at 355, 882 N.E.2d at 589-90. Our supreme court has explained that "if the defendant has

been made aware of the occurrence or transaction which is the basis for the claim, he can prepare to meet the plaintiff's claim, whatever theory it may be based on." Zeh, 111 Ill. 2d at 279, 489 N.E.2d at 1344. Thus, the critical inquiry is " 'whether there is enough in the original description to indicate that plaintiff is not attempting to slip in an entirely distinct claim in violation of the spirit of the limitations act.' " Simmons v. Hendricks, 32 Ill. 2d 489, 497, 207 N.E.2d 440, 444 (1965), quoting McCaskill, Illinois Civil Practice Act Ann., at 126, 127 (Supp. 1936).

The Department contends that even if the facts would have been sufficient to invoke the relation-back doctrine if this case proceeded to a circuit court pursuant to the common law it would not apply to administrative actions taken pursuant to the statutory provisions of the UTA. For the reasons that follow, we agree.

We begin by noting that the statutory procedures applicable to pleadings filed to initiate causes of action in Illinois circuit courts and the statutory procedures applicable to tax refund requests under the UTA arise under separate and distinct legislative enactments. Article II of the Code of Civil Procedure, known as the Civil Practice Law (735 ILCS 5/1-101(b) (West 2006)) (hereinafter the Civil Practice Law) governs litigation conducted under the jurisdiction of a circuit or other Illinois courts. 735 ILCS 5/1-104(a) (West 2006). Tax refund claims filed under the UTA are governed by sections 19 through 22 of that statute (see 35 ILCS 105/19 through 22 (West 2006)), which explicitly incorporate sections 6 and 6a of the ROTA. See 35 ILCS 120/6, 6a (West 2006). The procedure of hearings requested and held to resolve disputes arising out of the Department's administration and enforcement of the UTA's provisions is governed by the Illinois Administrative Procedure Act (5 ILCS 100/1-1 et seq. (West 2006)). See 35 ILCS

105/12b (West 2006) (Section 12b of the UTA specifically provides that "[t]he Illinois Administrative Procedure Act is hereby expressly adopted and shall apply to all administrative rules and procedures of the Department for Revenue under this Act"). The Illinois Administrative Procedure Act contains no provision referencing the relation-back doctrine, or any of the other pleadings provisions contained in the Civil Practice Law.

Therefore the question that we must answer in this appeal is whether the relation-back doctrine, which is found in section 2-616(b) of the Civil Practice Law (735 ILCS 5/2-616(b) (West 2006)) applies to a tax refund claims made before the Department pursuant to section 19 of the UTA (35 ILCS 105/19 (West 2006)) so as to toll the statute of limitations prescribed by section 21 of the UTA (35 ILCS 105/21 (West 2006)).

The legislature has addressed the applicability of the Civil Practice Law to other statutes, stating that:

"(a) The provisions of Article II [the Civil Practice Law] of this Act apply to all proceedings covered by Articles III [the Administrative Review Law] through XIX of this Act except as otherwise provided in each of the Articles III through XIX, respectively.

(b) *In proceedings in which the procedure is regulated by statutes other than those contained in this Act, such other statutes control to the extent to which they regulate procedure but Article II of this Act applies to matters of procedure not regulated by such other statutes*.

(c) As to all matters not regulated by statute or rule of court, the practice at common law prevails." (Emphasis added.) 735 ILCS 5/1-108 (West 2002).

Accordingly, to the extent that the UTA does not regulate the matters of procedure in question, the Civil Practice Law applies. See, *e.g.*, Madison Two Associates v. Pappas, 227 Ill. 2d 474, 479-80, 884 N.E.2d 142, 147 (2008); In re Application of County Treasurer & ex-officio County Collector, 361 Ill. App. 3d 504, 508, 837 N.E.2d 947, 951 (2005); ABN Ambro Services Co., v. Naperville Park District, 325 Ill. App. 3d 7, 10, 756 N.E.2d 445, 448 (2001). Where the statute fully regulates a given matter of procedure, it will preempt the Civil Practice Law with respect to that matter. See In re Application of the Cook County Collector For Judgment & Order of Sale Against Lands & Lots Returned Delinquent For Nonpayment of General Taxes for the Year 1987 & Prior Years, 271 Ill. App. 3d 12, 16, 648 N.E.2d 153, 156 (1995).

In the present case, we agree with the Department that the UTA does fully regulate the procedures for filing of refund claims, and more specifically the time requirements for filing of such claims, so as to preclude the late filing sanctioned under section 2-616(b) of the Civil Practice Law (735 ILCS 5/2-616(b) (West 2006)). The very same analysis previously discussed with respect to the relevant UTA and ROTA provisions also explains why the statute would preempt the provisions the Civil Practice Law.

As we discussed above, the plain language of sections 19 and 21 of the UTA (35 ILCS 105/19, 21 (West 2006)) as well as the plain language of sections 4, 6, and 6a of the ROTA (35 ILCS 120/4, 6, 6a (West 2006)), makes clear that: (1) a tax refund can only be obtained by filing a refund claim within the prescribed period of time; (2) that such a claim is comprised of the exact amount of the refund sought; and (3) that any extension of that time to amend or otherwise would require a written waiver tolling the statute of limitations so as to permit amending the

35

No. 1-08-2985

amount sought.

Briefly summarized, section 6 of the ROTA (35 ILCS 120/6 (West 2006)), which is expressly incorporated by section 19 of the UTA (35 ILCS 105/19 (West 2006)), specifically provides that no amount of tax sought in a refund claim may be refunded outside of the prescribed statute of limitations, unless the parties agree to an extension of that time to permit the Department to issue a new notice of tax liability. Section 4 of ROTA further provides that such an agreement to extend the limitations period must be made in writing, and that it must be entered into "before the expiration of the time prescribed in this Section for the issuance of a notice of tax liability." 35 ILCS 120/4 (West 2006).

Sections 6 of the ROTA further demonstrates that in providing a means for extending the limitations period the legislature intended to provide a reciprocal benefit to the Department and the taxpayer. 35 ILCS 120/6 (West 2006). As already noted above, section 6 of the ROTA states:

> "[A]s to any claim for *** refund filed with the Department on and after each January 1 and July 1 *no amount* of tax *** erroneously paid *** more than 3 years prior to such January 1 and July 1, respectively, shall be credited or refunded, *except that if both the Department and the taxpayer have agreed to an extension of time to issue a notice of tax liability as provided in Section 4 of this Act, such claim may be filed at any time prior to the expiration of the period agreed upon*." (Emphasis added.) 35 ILCS 120/6 (West 2006).

Under this provision, if the Department and the taxpayer have executed an agreement extending

36

the time for the Department to issue a notice of tax liability, then such an agreement automatically extends the time for the taxpayer to file any refund claim for the same tax period. Accordingly, under the plain language of the statute, it is apparent that the legislature intended to maintain a reciprocity between the taxpayer's right to file a new refund claim and the Department's right to issue a new notice of tax liability and to permit the tolling of the statute of limitations only in that scenario. Applying the relation-back doctrine in section 2-616(b) of the Civil Practice Law (735 ILCS 5/2-616(b) (West 2006)) to extend the limitation period, would undoubtedly thwart that intent.

We also find relevant that although the UTA expressly adopts Article III of the Code of Civil Procedure (hereinafter the Administrative Review Law) to govern all proceedings for the judicial review of final administrative decisions of the Department (see 35 ILCS 120/12 (West 2006) ("[t]he provisions of the Administrative Review Law, and the rules adopted pursuant thereto, shall apply to and govern all proceedings for the judicial review of final administrative decisions of the Department hereunder")), it nowhere similarly adopts, incorporates or references any of the pleading provisions of Article II of that code (*i.e.*, the Civil Practice Law), including the relation-back doctrine, to govern the initial proceedings before the Department. Instead, as already noted above, sections 19 through 22 of the UTA provide the rules governing the filing of refund claims. As both the UTA and the complementary provisions in the ROTA avoid referencing to any other provisions of the Code of Civil Procedure, we should not read any such incorporation into the statute. See People v. Voots, 386 Ill. App. 3d 404, 408, 896 N.E.2d 1127, 1131 (2008) (holding that there was no statutory authority permitting the trial court to award

ordinary costs in an election contest where the relevant section of the Election Code providing that election contests be tried in like manner as "other civil cases" incorporated only provisions contained in Civil Practice Law (Article II of the Code of Civil Procedure), but did not incorporate provisions of Article V of that code governing award of costs; noting " the [relevant section of the Election Code] makes no reference to the provisions contained in article V of the Code of Civil Procedure, and we cannot read such a reference into the statute"); see also Town & Country Utilities, Inc. v. Illinois Pollution Control Board, 225 Ill. 2d 103, 117, 866 N.E.2d 227, 235 (2007) (a court may not depart from the plain language of the statute and read into it exceptions, limitations, or conditions that are not consistent with the express legislative intent); see also Atlenheim German Home v. Bank of America, N.A., 376 Ill. App. 3d 26, 36, 875 N.E.2d 1172 (2007) (the statutory maxim of construction *inclusio unius est exclusio alterius* means that the inclusion of one is the exclusion of the other).

Similar analysis has been made in other contexts where our appellate courts have exhibited reluctance in applying different provisions of the Code of Civil Procedure to other types of administrative proceedings, explaining that "administrative procedure is [intended to be] simpler, less formal and less technical than judicial procedure." Forest Preserve District v. Illinois Labor Relations Board, 369 Ill. App. 3d 733, 750, 861 N.E.2d 231 (2006) (holding that pleadings before the Labor Relations Board in unfair labor practice proceedings was governed not by the Code of Civil Procedure, but rather by the board's rules governing procedure); see also Jones v. Illinois Department of Human Rights, 162 Ill. App. 3d 702, 705, 515 N.E.2d 1255 (1987) (rejecting petitioner's argument that a complaint dismissed by the Human Rights

Department for want of prosecution should not be considered final and appealable, and could be saved under section 13-217 of the Code of Civil Procedure, which permits such an action to be refiled within a year of dismissal; holding that the Code does not apply to administrative proceedings); Village of South Elgin v. Pollution Control Board, 64 Ill. App. 3d 565, 570, 381 N.E.2d 778 (1978) (holding that generally the legislature did not intend the Civil Practice Law to apply to administrative proceedings); Desai v. Metropolitan Sanitary District of Greater Chicago, 125 Ill. App. 3d 1031, 1033, 466 N.E.2d 1045 (1984) (holding that a motion for summary judgment was not appropriate at a hearing before the Civil Service Board of the Metropolitan Sanitary District, where the "Code of Civil Procedure is not applicable to administrative proceedings," since "administrative procedure is [intended to be] simpler, less formal and less technical than judicial procedure").

This result in rejecting the application of the relation-back doctrine in the context of Illinois use tax refund claims is consistent with the long standing Illinois precedent that "statute[s] of limitations continue to run unless tolling is authorized by a statute." IPF Recovery Co. v. Illinois Insurance Guaranty Fund, 356 Ill. App. 3d 658, 665, 826 N.E.2d 943, 949 (2005); see also Illinois Bell Telephone Co. v. Allphin, 60 Ill. 2d 350, 356, 326 N.E.2d 737 (1975) (holding that the circuit court erred in judicially tolling the 20-day limitation period for filing protests with the Department because it was "a statute of limitations, which as a general rule, continues to run unless tolling is authorized by the statute"); see also Dow Chemical Co., 224 Ill. App. 3d at 268-69, 586 N.E.2d 516 (stating that "[a]lthough it might seem reasonable to judicially toll the statute of limitations in order to fashion a remedy for [the plaintiff], such a

decision is not supported by Illinois case law which holds that no exceptions which toll a statute of limitations or enlarge its scope will be implied," and noting that the case seemed to be one "which calls for a legislative remedy rather than a judicial one"); see also Sundance Homes, Inc. v. County of Du Page, 195 Ill. 2d 257, 284, 746 N.E.2d 254 (2001) (rejecting the application of *laches* over the statute of limitations to a claim for refund of impact fees, holding that "the legislature intended that a uniform and harmonious system of law apply to refund cases, and the maintenance of two time-bar standards [equitable and statutory] for simple refund cases is inconsistent with that intent"); Fisher v. Rhodes, 22 Ill. App. 3d 978, 981, 317 N.E.2d 604 (1974) ("It is an established rule regarding statutes of limitations that no exceptions thereto will be implied, for if the legislature had intended to except any class of persons from the effect of the statute, it would have done so and courts will not assume such authority or dominion").

American cites to no Illinois case applying the relation-back doctrine to toll the statute of limitations in the context of the refund claims brought under the UTA or the complementary ROTA, and our research has revealed none. Instead, American relies on the 50-year old decision of the federal district court in Ryan v. Harrison, 146 F. Supp. 671 (1956), which applied the relation-back doctrine in the context of an income tax refund sought under the federal income tax code.

We initially note that we are not bound by the decisions of lower federal courts. Mekertichian v. Mercedes-Benz U.S.A., L.L.C., 347 Ill. App. 3d 828, 836, 807 N.E.2d 1165, 1171 (2004), quoting People v. Spahr, 56 Ill. App. 3d 434, 438, 371 N.E.2d 1261, 1264 (1978) (" '[D]ecisions of Federal courts, other than United States Supreme Court decisions[,] *** are not

binding on Illinois courts' "); see also <u>Prodromos v. Everen Securities, Inc.</u>, 389 Ill. App. 3d 157, 175, 329, 906 N.E.2d 599, 615 (2009), citing <u>Travelers Insurance Co. v. Eljer Manufacturing, Inc.</u>, 197 Ill. 2d 278, 302, 757 N.E.2d 481 (2001) ("as a general rule, decisions of federal district or circuit courts are not binding on Illinois courts"); see also <u>S.I. Securities v. Bank of Edwardsville</u>, 362 Ill. App. 3d 925, 932, 841 N.E.2d 995, 1001 (2005), citing <u>Ray Schools-Chicago, Inc. v. Cummins</u>, 12 Ill. 2d 376, 381, 146 N.E.2d 42, 45 (1957), and <u>People v. Crawford Distributing Co.</u>, 53 Ill.2d 332, 338-39, 291 N.E.2d 648, 652 (1972) ("Illinois courts are generally not bound by federal court decisions construing Illinois statutes that do not involve federal questions").

Moreover, the federal income tax statute, *i.e.*, the Internal Revenue Code (26 U.S.C. §122 (2000)) involved in <u>Ryan</u> is different from the statute involved here. Unlike the UTA, which as already explained above, permits only one statutorily designated method for tolling the statute of limitations, the Internal Revenue Code apparently permits broader application of the relation-back doctrine. This is evident from subsequent federal regulations promulgated under the Internal Revenue Code (26 U.S.C. §7422) which specifically adopt the relation-back doctrine and require the taxpayer to specify each ground for which a refund is claimed, or otherwise forfeit that refund. See 26 C.F.R. §301.6402-2(b)(1) (West 2009) ("No refund or credit will be allowed after the expiration of the statutory period of limitation applicable to the filing of a claim therefor except upon one or more of the grounds set forth in a claim filed before the expiration of such period. The claim must set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof. The

statement of the grounds and facts must be verified by a written declaration that it is made under the penalties of perjury. A claim which does not comply with this paragraph will not be considered for any purpose as a claim for refund or credit"). There is no Illinois counterpart to this federal regulation, not in the UTA, ROTA, the Illinois Income Tax Act or in any regulation promulgated by the Department.

Consequently, for all of the aforementioned reasons, we find that the relation-back doctrine does not apply to refund claim filed under the UTA and that the only way American could have extended the statute of limitations was to follow the procedures outlined in sections 4 and 6 of the ROTA, which was undisputedly not done here.

### 6. Equitable and Constitutional Claims

Lastly, we reject American's contention that equitable and constitutional concerns compel the permission of its second claim outside of the statute of limitations. American's equitable claim is predicated on the language of this appellate court in Dow Chemical Co., 224 Ill. App. 3d at 268-69, 586 N.E.2d at 520. In that case, in 1979, the Department issued a deficiency notice to the taxpayer for its 1975 through 1979 state income tax. In 1980, the taxpayer timely filed a protest. In 1982, the Department started a re-audit of the taxpayer's returns. Effective December 1982, the Income Tax Act was amended to require unitary apportionment for corporations and subsidiaries. In December 1983, the Department's re-audit revealed an overpayment of $401,237 under the unitary method. On December 20, 1983, the taxpayer filed an amended protest for return of the overpayment. The Department determined that its original notice of deficiency to the taxpayer was void but that the taxpayer's refund claim

was nonetheless time-barred. Dow Chemical Co., 224 Ill. App. 3d at 264-65, 586 N.E.2d at 517-18.

The appellate court affirmed the Department's decision, holding that a "taxpayer has an affirmative duty to file for a tax refund within a prescribed period of time." Dow Chemical Co., 224 Ill. App. 3d at 267, 586 N.E.2d at 519. The court noted that in the absence of a written agreement to extend the limitations period,[8] the taxpayer was not entitled to a refund because Illinois case law "favors a strict construction of statute of limitations." Dow Chemical Co., 224 Ill. App. 3d at 269, 586 N.E.2d at 520.

The taxpayer argued that the limitation statute should be equitably tolled because the taxpayer should not have to bear the uncertainty of Illinois law over the unitary method. Dow Chemical Co., 224 Ill. App. 3d at 268, 586 N.E.2d at 519. The appellate court rejected the taxpayer's invitation to equitably toll the statute of limitations, holding that under Illinois case law "no exceptions which toll a statue of limitations or enlarge its scope will be implied." Dow Chemical Co., 224 Ill. App. 3d at 268, 586 N.E.2d at 519. The court then went on to note in dicta that the taxpayer's equitable argument was undercut by the fact that prior to the change in the law, a 1975 Department tax bulletin had indicated that the unitary method was permissible and that the taxpayer:

"fail[ed] to explain why it did not file a claim for refund [based on the unitary method] as

---

[8]We note that section 911(c) of the Income Tax Act (35 ILCS 5/911(c) (West 2006)) provides for an agreement similar to that provided in section 6 of the ROTA (35 ILCS 120/6 (West 2006)).

protective device before the statute of limitations expired on filing such a claim, or at the very least, obtain an extension for filing a claim as provided in section 911 of the statute." Dow Chemical Co., 224 Ill. App. 3d at 268, 586 N.E.2d at 519.

That case is inapposite. Unlike in Dow Chemical Co., in the present case, there was no change in the Department's method of computing income taxes, which could have impacted upon the refund amount later sought by American. Instead, here American self-assessed the use tax and remitted it to the Department, later seeking a refund for amounts paid on certain exemptions for fuel used on "international flights." As already explained in detail above, in filing this refund claim American bore the burden of establishing the amount of refund that it sought within the prescribed statute of limitations permitted for such refunds. Therefore, contrary to American's interpretation, we do not read the aforementioned *dicta* in Dow Chemical Co. as permitting American to toll the statute of limitations by filing a second claim during the Department's audit. In fact, in its holding the court in Dow Chemical Co. made clear that despite the Department's ongoing audit, in order to toll the limitation period, the taxpayer was required to timely file the appropriate refund claim or at least seek an extension of time in order to do so. Dow Chemical Co., 224 Ill. App. 3d at 268, 586 N.E.2d at 519.

American nevertheless contends that the Department's denial of its second refund claim deprived it of its right to due process of law guaranteed by the fourteenth amendment of the United States Constitution (U.S. Const. amend. XIV, §1)[9] and the Constitution of the State of

---

[9]The fourteenth amendment states in pertinent part: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall

Illinois (Ill. Const., art. I, §2, art. IX, §2)[10] because: (1) "there is no statutory prohibition on amending a timely filed refund claim" and (2) because the Department "changed their rules midstream." Citing to <u>Reich v. Collins</u>, 513 U.S. 106, 111, 130 L. Ed. 2d 454, 115 S. Ct. 547 (1994), American contends that "due process requires a clear and certain remedy for taxes collected," and that "what a State may not do *** is reconfigure its [tax refund procedure] unfairly in mid-course." For the reasons that follow, we disagree.

With respect to American's first claim that it was denied due process of law because "there is no statutory prohibition on amending a timely filed refund claim," we note that as already elaborated above, American did not seek an amendment of a timely filed claim but rather the filing of a separate claim outside of the three year statute of limitations mandated under section 21 of the UTA (35 ILCS 105/21 (West 2006)).

Moreover, contrary to American's assertion, as already discussed in detail above, sections

---

any State deprive any person of life, liberty or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend., XIV, §1.

[10]Section 2, article I, of the Illinois Constitution states in pertinent part: "No person shall be deprived of life, liberty or property without due process of law nor be denied the equal protection of the laws." Ill. Const., art. I, §2.

Section 2 of article IX, of the Illinois Constitution states in pertinent part: "In any law classifying the subjects or objects of non-property taxes or fees, the classes shall be reasonable and the subjects and objects within each class shall be taxed uniformly. Exemptions, deductions, credits and refunds and other allowances shall be reasonable." Ill. Const., art. IX, §2.

19 through 22 of the UTA, as well as sections 6 and 6a of the ROTA incorporated into the UTA, afford taxpayers a "clear and certain" statutory means by which they may request a refund.  See 35 ILCS 105/19, 21, 22 (West 2006); see also 35 ILCS 120/6, 6a (West 2006); see also W.L. Miller Co., 315 Ill. App. 3d at 806, 734 N.E.2d at 507; Dow Chemical Co., 224 Ill. App. 3d at 268-69, 586 N.E.2d at 520.

We similarly disagree with American's contention that the Department's actions during the audit constituted "changing the rules mid-stream."  American purports to predicate this contention on the following relevant facts: (1) the Department's auditor, Mondy, mistakenly believed that agreement to extend the limitation period pursuant to section 6 of the ROTA (35 ILCS 120/6 (West 2006)), *i.e.*, "a waiver" of the statute of limitations, was not necessary for American to file its second refund claim; (2) the Department itself incorrectly instructed American to file a second refund claim on the same forms used for American's first refund claim; and (3) the Department's auditor initially sent a letter to American approving its second refund claim, and then turned around and stated that the second refund claim would nevertheless not be approved.

What American refuses to acknowledge, however, is that all of these things occurred after the statute of limitations for timely filing refund claims expired.  The record reveals that the statute of limitations for filing refund claims, as well as the corollary agreement for an extension to file such claims for the relevant time period, expired on January 1, 2004.  The record further reveals that the audit did not commence until September 20, 2004, nine months after the expiration of this statutorily mandated time period.  Thus, regardless of the errors or confusion

that occurred within the Department during its audit, American's second refund claim had become time barred prior to the audit itself. Consequently, American's due process rights could not have been violated.

III. CONCLUSION

Accordingly, for all of the foregoing reasons, we reverse the judgment of the circuit court.

Reversed.

McBRIDE, J., and ROBERT GORDON, J., concur.

No. 1-08-2985

**REPORTER OF DECISIONS - ILLINOIS APPELLATE COURT**
**(Front Sheet to be Attached to Each Case)**

Please use the following form

AMERICAN AIRLINES, INC.
        Plaintiff-Appellee,

v.

THE DEPARTMENT OF REVENUE,
        Defendant-Appellant.

---

Docket No.

COURT

Opinion
Filed

No. 1-08-2985

Appellate Court of Illinois
First District, SIXTH Division

December 18, 2009
(Give month, day and year)

---

JUSTICES

JUSTICE JOSEPH GORDON DELIVERED THE OPINION OF THE COURT:
JUSTICE McBRIDE and JUSTICE ROBERT GORDON concur.

---

APPEAL from the
Circuit Court of Cook
County; the Hon____
Judge Presiding.

Lower Court and Trial Judge(s) in form indicated in margin:

Appeal from the Circuit Court of Cook County;

The Hon. Alexander P. White Judge presiding.

---

APPELLANTS
John Doe, of Chicago

For APPELLEES, :

Smith and Smith of
Chicago,

Indicate if attorney represents APPELLANTS or APPELLEES and include attorney's of counsel. Indicate the word FOR NONE if not represented.

FOR APPELLANT: Lisa Madigan, Attorney General of the State of Illinois, Michael A. Scodro, Solicitor General, and Timothy K. McPike, Assistant Attorney General, 100 W. Randolph St., 12th Floor, Chicago, IL 60601, (312) 814-2546

APPELLEE: Michael J. Koenigsknecht, Michael J. Koenigsknecht & Associates, LLC, 900 N. Lake Shore Drive, Suite 1712, Chicago Illinois, 60611, (312) 543-5588

---

Add attorneys for third-party appellants and/or appellees.

48