DANIEL WALKER et al., Petitioners-Appellants, v. STATE BOARD OF ELECTIONS et al., Respondents-Appellees.

First District (3rd Division)  Nos. 78-1234, 78-1268 cons.

Opinion filed June 6, 1979.

Lawrence J. Suffredin, Jr., and Patrick G. Reardon, both of Chicago, for petitioner Susan Brock Thomas.

Steven H. Mora, of Walker, Gende, Hatcher, Doyle & Giamanco, of Oak Brook, for petitioner Daniel Walker.

Michael Levinson, of Chicago, for respondent State Board of Elections.

Robert C. Howard and Paddy Harris McNamara, both of Chicago, for respondent Better Government Association.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

Petitioners Daniel Walker and Susan Thomas appeal from an order of the Illinois Board of Elections which required them to file reports mandated by the Illinois campaign disclosure act. (Ill. Rev. Stat. 1975, ch. 46, par. 9—22.) The act provides for direct review of Board findings in the appellate court. (Ill. Rev. Stat. 1975, ch. 46, par. 9—22.) A brief recitation of the chronology of the proceedings may be helpful in understanding the issues.

On June 30, 1975, the Better Government Association filed a complaint with the Board alleging violation of the act by former Governor Daniel Walker, James R. Sneider, and the All-Illinois Democratic Committee. The AIDC was an organization formed by Sneider and others for the purpose of raising funds to retire debts incurred during the 1972 gubernatorial campaign of Walker. On July 7, 1975, Walker, Sneider, and the AIDC filed suit seeking an injunction barring all further proceedings by the Board. The trial court held that the statutory methods of selecting Board members and of breaking tie votes on the Board were unconstitutional. The supreme court affirmed the findings of the trial court and restrained the Board from further proceedings on the BGA complaint until a new Board was selected. *Walker v. State Board of Elections* (1976), 65 Ill. 2d 543, 359 N.E.2d 113.

After the Board was reconstituted, the present complaint was amended to include Susan Thomas and the Governor's Midterm Dinner Committee. The GMDC was an organization established to hold a dinner on March 21, 1975, to raise funds to retire debts incurred during the 1972 Walker gubernatorial campaign. After a finding by the Board that the complaint was filed with justifiable grounds, a public hearing before a Board hearing examiner commenced on July 13, 1978, and concluded the following day. At that hearing, the following pertinent evidence was adduced.

James R. Sneider read a prepared statement which was accepted by all parties as part of the evidence. He was custodian of the funds for the AIDC and used those funds at the direction of members of Walker's staff. AIDC, which was founded at Walker's request in 1973, continued in existence and received campaign contributions after the effective date of the act, October 1, 1974. The decision not to file campaign disclosure reports with the Board was made by Walker's staff members, Walker's general counsel, and Walker's retained legal counsel. AIDC transferred over $409,000 from its bank account from October 1974 through February 1977. Sneider declared that if the Board ordered him to file a report for AIDC he would comply. (He did file such a report on behalf of AIDC, and is not a party to these proceedings.)

GMDC, organized at Walker's request, retained in a bank account campaign contributions which were made to retire the 1972 campaign debt. Susan Thomas was treasurer of GMDC and was a signatory on the account. Thomas gave instructions authorizing the bank to permit David Green to control the account in the event she was unable to act. Thomas needed the cosignature of David Green to write a check for more than $500. From February 1975 to May 1976 nearly $300,000 flowed through the account which was closed in May 1977. No reports concerning the campaign contributions and disbursements were filed with the Board by GMDC.

The deposition of Angelo Geocaris was admitted into evidence. Geocaris stated that Walker had asked him to organize the AIDC. AIDC funds were obtained through campaign contributions and were disbursed as directed by members of Walker's staff. Geocaris stated that the disbursements probably would have been made at the request of Victor de Grazia or David Green.

Daniel Walker's deposition was admitted into evidence. He stated that he had nothing to do with the activities of the committees. He did not participate in their solicitations, receipt of contributions, expenditures, legal decisions, or filing and disclosure decisions. He did not administer his own campaign expenditures or contributions, and he did not designate himself as an officer of either committee. Walker stated that his participation in the committee activities was limited to asking certain persons to form the committees and to appearing at the committees' fund raising functions. He may not have appointed officers for the committees; he was not sure. Walker also stated that David Green was one of his closest friends and advisors, and that he probably discussed the committees and the Board proceedings with Green. He discussed all matters with Green.

Several letters from de Grazia to Sneider were introduced into evidence. They showed that several anonymous contributions in excess of $1,000 were turned over to AIDC.

Susan Thomas and Victor de Grazia were subpoenaed to attend the hearing. They did not appear. Prior to the preliminary closed hearing, Walker's counsel stated he would appear on behalf of Thomas. He subsequently informed the Board he would not appear on her behalf. Thomas did not participate in either hearing.

At the conclusion of the hearing, the hearing examiner issued a recommended order finding that the AIDC and GMDC had accepted and disbursed campaign contributions after the effective date of the campaign disclosure act and that Walker, Thomas, and the committees were in violation of the reporting requirements of the act. The recommended order also mandated the parties to file the required reports. The Board by

subsequent order adopted the findings and recommendations of the examiner.

Petitioners initially contend that the act does not apply to campaign contributions received after the effective date of the act, October 1, 1974, for the retirement of an earlier campaign debt. They maintain that Daniel Walker was not a "candidate" as defined under the act and that requiring campaign contributions and expenditure reports for the retirement of the campaign debt from the 1972 gubernatorial campaign constituted *ex post facto* legislation.

The cardinal rule in the interpretation and construction of statutes is to ascertain and give effect to the intention of the legislature. (*Young v. Mikva* (1977), 66 Ill. 2d 579, 363 N.E.2d 851; *People v. Savaiano* (1976), 66 Ill. 2d 7, 359 N.E.2d 475.) In ascertaining the intent of the legislature, consideration must be given to the entire statutory scheme, its purposes and its objectives. (*People v. Bratcher* (1976), 63 Ill. 2d 534, 349 N.E.2d 31; *People ex rel. Holland v. Edelman* (1975), 27 Ill. App. 3d 793, 327 N.E.2d 338.) The act in question required all political committees, including candidates who manage their own campaigns, receiving or expending funds in excess of $1,000 to file a statement of organization and periodic financial statements with the Board or the county clerk. (Ill. Rev. Stat. 1975, ch. 46, pars. 9—1.9, 9—10.) The act is designed to preserve the integrity of the electoral process by requiring full public disclosure of the sources and amounts of campaign contributions and expenditures and the regulation of practices incident to political campaigns. The legislature wished the public to be informed of the total contributions received and expended by a political committee, the names of significant contributors and of individuals to whom a political committee is indebted.

Petitioners focus on the definition of the word "candidate" in the act (Ill. Rev. Stat. 1975, ch. 46, par. 9—1.3), and argue that disclosure applies only to those persons who seek nominations for, or election to, public office. Petitioners maintain that disclosure is not required because Daniel Walker was not a candidate after the effective date of the act.

■■ Nothing in the act compels the conclusion that it was to be limited in application only to political committees for declared candidates and nominees for public office. Rather, the act was designed to cover a broad range of campaign activity and we believe that it requires the filing of all campaign reports by State political committees in existence after the effective date of the act. Section 9—3 of the act (Ill. Rev. Stat. 1975, ch. 46, par. 9—3) provides in relevant part: "Every state political committee in existence on the date this Section becomes law shall file a statement of organization * * *." The section orders without reservation that campaign reports be filed by all State political committees in existence after the effective date of the act.

■■ We believe the decision in *Stein v. Howlett* (1972), 52 Ill. 2d 570, 289 N.E.2d 409, is dispositive of petitioners' contention that, if the act is applicable to them, it constitutes *ex post facto* legislation. In that case, it was argued that the Illinois Government Ethics Act was unconstitutional as an *ex post facto* law since it subjected public officials to disclosure of financial interest requirements which did not exist at the time of their election. Citing *Calder v. Bull* (1798), 3 U.S. (3 Dall.) 386, 1 L. Ed. 648, the court held that since the filing requirements of the Ethics Act were not to be applied retroactively, the Act was not an *ex post facto* law. In the present case, the filing requirements of the Act apply only prospectively. Therefore, it is not *ex post facto* legislation.

Petitioner Susan Brock Thomas also contends that the Board's order to preserve all campaign records was untimely since the BGA complaint was filed more than two years after the committee had ceased operations. Under the act, the treasurer of a political committee is required to keep a detailed account of all contributions and an exact account of all expenditures made by or on behalf of the committee for a period of two years. Ill. Rev. Stat. 1975, ch. 46, par. 9—7.

■■ ■ We observe initially that Thomas did not appear at either of the hearings conducted by the hearing examiner. Neither she nor anyone on her behalf asserted this issue to the hearing examiner or to the Board. Consequently, she has waived the issue. Just as importantly, the language of the act requiring the treasurer to keep the records for two years cannot be interpreted to mean a jurisdictional statute of limitations. There has been no showing on the treasurer's part that the records do not exist. Indeed, the GMDC bank account was not closed until May 1977. The Board's order requiring that Thomas preserve all campaign records was timely.

Petitioner Daniel Walker also contends that the Board's finding that he actively participated in the management of campaign contributions and expenditures is against the manifest weight of the evidence.

■■ Under the act, judicial review of Board determinations is governed by the provisions of the Administrative Review Act. (Ill. Rev. Stat. 1975, ch. 110, par. 265 *et seq.*) The findings of the Board on questions of fact are to be held *prima facie* true and correct. (See *Northern Illinois University v. Fair Employment Practices Com.* (1978), 58 Ill. App. 3d 992, 374 N.E.2d 748; *School District No. 175 v. Illinois Fair Employment Practices Com.* (1978), 57 Ill. App. 3d 979, 373 N.E.2d 447.) It is not the function of the court to reweigh the evidence or make independent determination of facts. *(General Electric Co. v. Illinois Fair Employment Practices Com.* (1976), 38 Ill. App. 3d 967, 349 N.E.2d 553.) The scope of review is limited to a determination of whether the findings of an administrative agency are

against the manifest weight of the evidence. (*Kerr v. Police Board* (1974), 59 Ill. 2d 140, 319 N.E.2d 478; *Unger v. Sirena Division of Consolidated Foods Corp.* (1978), 60 Ill. App. 3d 840, 377 N.E.2d 266.) For a judgment to be against the manifest weight of the evidence, it must appear that conclusions opposite to those reached by the agency are clearly evident. *King v. City of Chicago* (1978), 60 Ill. App. 3d 504, 377 N.E.2d 102; *Mobley v. Conlisk* (1978), 59 Ill. App. 3d 1031, 376 N.E.2d 247.

Daniel Walker maintains that the evidence established only that he initiated the formation of the committees and left the administration of campaign funds to others. We believe, however, the evidence demonstrated that Walker controlled and managed the funds, principally through David Green, his friend and adviser, and also through members of his staff. Green, a principal of the GMDC, supervised the management of the campaign contributions and expenditures emanating from those committees. Susan Thomas, as treasurer, reported to Green concerning the GMDC's financial status, and Green was a signatory on the bank account. Thomas needed Green's signature on all checks for more than $500. Daniel Walker stated in his deposition that Green participated in every serious decision made while he was Governor. Green advised him on all matters, including the 1972 campaign debt, the committees, and the proceedings before the Board. No one was designated to chair the committees and their management, and all decisions were entirely within the hands of Daniel Walker's close advisers and staff members. We therefore cannot say the Board's finding, that Daniel Walker actively participated in the management of the campaign contributions, was clearly erroneous or against the manifest weight of the evidence.

For the reasons stated, the order of the State Board of Elections is affirmed.

Order affirmed.

McGILLICUDDY and RIZZI, JJ., concur.