FOURTH DIVISION

No. 1-10-0885

| | | |
|---|---|---|
| MARK THOMPSON, | ) | Petition for Review |
| Petitioner-Appellant, | ) | from the Illinois State |
| | ) | Board of Elections |
| v. | ) | |
| | ) | No. 10 CD 001 |
| ILLINOIS STATE BOARD OF ELECTIONS, | ) | |
| ELIZABETH GORMAN, and THE GORMAN GOOD | ) | |
| GOVERNMENT GROUP, | ) | |
| Respondents-Appellees. | ) | |
| | ) | |

PRESIDING JUSTICE GALLAGHER delivered the judgment of the court, with opinion. Justices Hoffman and Lavin concurred in the judgment and opinion.

## OPINION

Petitioner Mark Thompson appeals from an order of the Illinois State Board of Elections (Board) dismissing his complaint against respondents Elizabeth Gorman and The Gorman Good Government Group (Group). On appeal, petitioner contends that this court should reverse the Board's dismissal of his petition and remand for further proceedings because he demonstrated justifiable grounds for further proceedings before the Board. We affirm in part and reverse and remand in part.

## BACKGROUND

On January 11, 2010, petitioner filed a complaint with the Board in which he alleged, *inter alia*, that respondents violated section 9-11 of the Election Code (10 ILCS 5/9-11 (West 2002)) by falsely reporting the identity of the parties that loaned the Group $390,000 in 2002 and reporting a false recipient for an expenditure of $100,080 that was made by the Group on June

1-10-0885

28, 2002. Petitioner also alleged that respondents violated section 9-25 of the Election Code (10 ILCS 5/9-25 (West 2002)) by receiving contributions made in the name of another person, in that $390,000 in loans were received by the Group in 2002 from "Dodge of Midlothian" and "Sales, Inc.," businesses owned by Gerald and Elizabeth Gorman, and its reports were then amended in 2004 to reflect that Gerald Gorman made those loans. Petitioner further alleged that respondents violated sections 9-8.10(a)(3) and 9-8.10(a)(4) of the Election Code (10 ILCS 5/9-8.10(a)(3), (a)(4) (West 2006)) by making expenditures to Gerald Gorman to reimburse him for mortgage payments he had made on a personal residence and violated section 9-8.10(a)(11) of the Election Code (10 ILCS 5/9-8.10(a)(11) (West 2002)) by making multiple expenditures to Gerald Gorman for services that he had not actually rendered.

A closed preliminary hearing was conducted on February 3, 2010, by a hearing examiner for the Board, and on February 7, 2010, the hearing examiner filed a written report in which he summarized the proceedings and made conclusions and recommendations. The examiner's report reflects that petitioner presented a summary of a semiannual report for the period of January 1 through June 30, 2002, that was believed to have been filed by the Group with the Board on July 31, 2002, and a summary of a semiannual report for the period of January 16 through June 30, 2002, that was believed to have been filed by the Group with the Board on March 9, 2004. Petitioner also presented summaries of the semiannual reports for the periods of January 1 through June 30, 2005, and January 1, 2006, through June 30, 2009. Each of the summaries contained receipts, expenditures, debts, obligations, and a funds balance of the Group for that reporting period. In addition, petitioner presented the dockets of two complaints for mortgage

1-10-0885

foreclosure by First Suburban National Bank (FSNB) against various parties, including Elizabeth Gorman and her husband Gerald.

Petitioner asserted that the evidence showed that the Group originally reported that Dodge of Midlothian and Sales, Inc., made loans to the Group in 2002, but later amended the report to reflect that the loans were made by Gerald Gorman, and that the Group originally reported that it made a payment of $100,080 to Sales, Inc., in 2002, but later amended the report to reflect that the payment was made to Gerald Gorman. Petitioner argued that the evidence thus showed that the 2002 payment was made to Gerald Gorman and that the Group falsely reported that it was made to Sales, Inc. Petitioner also asserted that the evidence showed that the Group made numerous expenditures to Gerald Gorman from March 2006 through March 2009 as repayment for loans that he never actually made to the Group and that three payments made to Gerald Gorman in 2007 for the stated purpose of "Partial Repayment of Loan for FSNB" were used to reimburse mortgage payments on property owned by Gerald and Elizabeth Gorman in relation to mortgage foreclosure proceedings filed against them by FSNB.

Peg Walsh, a representative of the Group, testified for respondents that it was her understanding that the Group initially reported that the loans at issue were made by Dodge of Midlothian and Sales, Inc., because the Group's accountants advised that it do so and that Gerald Gorman was advised to amend the reports because it would have been more proper to show that the loans were coming from him, since he was the owner of those two companies and they "were used as collateral on the loans." Brent Woods, a former treasurer of the Group, amended the reports to show that the $100,080 payment was made to Gerald Gorman, and not Sales, Inc.,

according to the instructions he had received from the Board. In addition, Gerald Gorman had a personal account at FSNB, and that bank was referenced by the Group in the purpose statements of three 2007 expenditures for loan repayments in its semiannual report to the Board to indicate into which bank those payments had been deposited.

Elizabeth Gorman testified that Gerald Gorman owned at least 90% of both Dodge of Midlothian and Sales, Inc., and that the reports were changed to reflect more accurately that the loans were made by Gerald. Elizabeth further testified that Woods had many conversations with the Board on how to amend correctly the reports to reflect that the $100,080 payment was made to Gerald and that the reports accurately reflected that all loan payments were made to Gerald because he was the person responsible for making all the loans at issue, regardless of who was originally listed.

The hearing examiner recommended that petitioner's complaint be found not to have been filed upon justifiable grounds and that the matter not proceed to a public hearing. In doing so, the examiner concluded that regardless of whether Gerald Gorman provided the Group the loans at issue as an individual or as the owner of a business, he could have been listed as the person providing the loans because he was personally responsible for them. The examiner also concluded that any shortcomings in the report regarding the $100,080 payment to Sales, Inc., were corrected when the reports were amended. In addition, the examiner concluded that petitioner did not provide any evidence to establish that the three payments made to Gerald Gorman in 2007 for the stated purpose of "Partial Repayment of Loan for FSNB" were anything other than properly made partial loan repayments. On March 8, 2010, the Board issued a written order dismissing

1-10-0885

petitioner's complaint, finding that it was not filed on justifiable grounds.

Petitioner appealed from that order and this court remanded the matter to the Board for a statement of findings regarding the reasons it determined that petitioner's complaint was not filed on justifiable grounds. *Thompson v. Gorman*, No. 1-10-0885 (Ill. App. Nov. 18, 2010). On December 3, 2010, the Board entered an order adopting the hearing examiner's recommendation and dismissing petitioner's complaint on the basis that it was not filed on justifiable grounds.

ANALYSIS

Petitioner contends on appeal that the Board erred in dismissing his complaint because he demonstrated justifiable grounds for further proceedings. Any person may file a verified complaint with the Board alleging a campaign finance violation under the Election Code. 10 ILCS 5/9-20 (West 2008). Upon receipt of the complaint, the Board is required to hold a closed preliminary hearing to determine whether the complaint appears to have been filed on justifiable grounds, and the Board shall dismiss the complaint without further hearing if it fails to determine that it had been so filed. 10 ILCS 5/9-21 (West 2008). Any party adversely affected by a judgment of the Board may obtain judicial review directly in the appellate court for the district in which the cause of action arose, and that review shall be governed by the provisions of the Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2008)) and its accompanying rules. 10 ILCS 5/9-22 (West 2008).

The purpose of a closed preliminary hearing is to elicit evidence on whether the complaint was filed on justifiable grounds and has some basis in fact and law. 26 Ill. Adm. Code 125.252, amended at 14 Ill. Reg. 10832, 10849 (eff. June 22,1990). The complainant bears the burden of

1-10-0885

introducing sufficient evidence or information for the Board to conclude that the complaint has been filed on justifiable grounds. 26 Ill. Adm. Code 125.252(c)(4), amended at 14 Ill. Reg. 10832, 10850 (eff. June 22, 1990). The justifiable grounds standard focuses on the factual and legal sufficiency of the complaint, and "[t]he essential inquiry is whether the complaint is factually and legally justified." *Cook County Republican Party v. Illinois State Board of Elections*, 232 Ill. 2d 231, 245 (2009).

The determination of whether a complaint has been filed on justifiable grounds presents a mixed question of fact and law, and we therefore review the Board's dismissal of petitioner's complaint to determine whether the Board clearly erred in deciding that the complaint was not filed on justifiable grounds. *Id*. An administrative agency's decision will be deemed clearly erroneous where the record leaves the reviewing court with the definite and firm conviction that a mistake has been made. *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 211 (2008).

### I. Counts I and II

Petitioner first asserts that the Board's decision that the first two counts of his complaint were not filed on justifiable grounds is clearly erroneous. In count I, petitioner alleged that respondents violated section 9-11 of the Election Code by falsely reporting the identity of the parties that loaned $390,000 to the Group in 2002 and/or violated section 9-25 of the Election Code by receiving $390,000 in loans made in the name of another person. In count II, petitioner alleged that respondents violated section 9-11 of the Election Code by falsely reporting the recipient of an expenditure of $100,080 made by the Group on June 28, 2002.

1-10-0885

Each report of campaign contributions shall disclose "each loan to or from any person within the reporting period by or to such committee in an aggregate amount or value in excess of $150, together with the full names and mailing addresses of the lender and endorsers, if any, and the date and amount of such loans." 10 ILCS 5/9-11(8) (West 2002). In addition, "no person shall knowingly accept any anonymous contribution or contribution made by one person in the name of another person." 10 ILCS 5/9-25 (West 2002).

The semiannual reports filed by the Group with the Board show that respondents initially reported on July 31, 2002, that the Group had received loans from Dodge of Midlothian of $40,000 on January 16; $50,000 on February 7; $125,000 on March 11; and $110,000 on June 28, 2002; and had received a loan of $50,000 from Sales, Inc., on February 22, 2002. The reports also show that respondents reported on March 9, 2004, that Gerald Gorman was the creditor on those loans and that $100,080 of the $110,000 loan made on June 28, 2002, had been repaid. As such, the evidence shows that the Group must have reported the incorrect identity of the lender on at least one occasion because the loans could not have been made by Dodge of Midlothian and Sales Inc., as originally reported, and also by Gerald Gorman.

However, in concluding that the first count of petitioner's complaint was not filed on justifiable grounds, the hearing examiner determined that "whether Gerald Gorman as the owner of a business or Gerald Gorman the individual gave the loans, the person who was ultimately responsible for the loan can be listed as the loaner. In this case [Elizabeth Gorman] has stated that Gerald Gorman is personally responsible for these loans." In addition, according to the hearing examiner's report, Elizabeth Gorman testified that Gerald Gorman owned at least 90% of

both Dodge of Midlothian and Sales, Inc., that "the loaner being Dodge of Midlothian and Sales Inc., [*sic*] were her husband Gerald Gorman," and that "the reports were changed to more accurately reflect Gerald Gorman."

"It is a well-established principle that a corporation is separate and distinct as a legal entity from its shareholders, directors and officers." *Main Bank of Chicago v. Baker*, 86 Ill. 2d 188, 204 (1981). This is true even in a closely-held corporation in which the stock is held in a few hands. *Gallagher v. Reconco Builders, Inc.*, 91 Ill. App. 3d 999, 1004 (1980). Thus, "[t]he law is clear that payments made by a corporation may not be attributed to individual shareholders because corporations and shareholders are distinct legal entities." *Trossman v. Philipsborn*, 373 Ill. App. 3d 1020, 1048 (2007). As such, respondents could not have accurately reported that the loans at issue had been made by Gerald Gorman if they were made by Dodge of Midlothian and Sales, Inc., or vice versa, because the corporations and Gerald Gorman the individual are distinct legal entities. To the extent that the record indicates that the hearing examiner, the Board, and Elizabeth Gorman believed otherwise because Gerald Gorman owned at least 90% of both Dodge of Midlothian and Sales Inc., we disagree.

Moreover, the evidence does not establish that Gerald Gorman made or "was ultimately responsible for" the loans at issue. Respondents initially reported that the loans were made by Dodge of Midlothian and Sales, Inc. The hearing examiner indicated in his report that he concluded that "the loans were from Gerald Gorman" because Elizabeth Gorman had testified to that effect at the preliminary hearing. However, as noted above, the testimony of Elizabeth Gorman appears to have been based on the incorrect assumption that any loans made by Dodge of

Midlothian and Sales, Inc., could have been attributed to Gerald Gorman as an individual because he owned at least 90% of each corporation.

In addition, Peg Walsh's testimony that it was her understanding that the reports had been amended because Dodge of Midlothian and Sales, Inc., "were used as collateral on the loans and it would be more proper to show the loans coming from Mr. Gorman," does not establish that Gerald Gorman made the loans and raises more questions than it answers. We initially note that Walsh testified as to "her understanding of the situation," which indicates that she did not have firsthand knowledge of the reason the reports had been amended. Moreover, Walsh did not explain how the corporations were or could have been "used as collateral on the loans." To create a security interest by a debtor in favor of a creditor, one requirement is that the debtor must have or acquire rights in the collateral. *Metropolitan Life Insurance Co. v. American National Bank & Trust Co.*, 288 Ill. App. 3d 760, 766 (1997). There is no evidence in the record that the Group, the debtor, had an ownership interest in either of the corporations. Moreover, if Gerald Gorman had made the loans to the Group, as respondents ultimately reported, it would not make sense for him to pledge his ownership interests in the corporations as collateral because he would have been the creditor, not the debtor.

As such, the implausible and oftentimes confusing explanations provided by Elizabeth Gorman and Peg Walsh regarding the reasons the reports were amended to reflect that Gerald Gorman was the lender do not shed any light as to the identity of the party or parties that made the loans at issue and actually diminish this court's confidence that the reports are accurate. In addition, respondents did not present any other evidence, such as a written loan agreement, to

show that the loans were made by Gerald Gorman. Thus, it is unclear from the record which of the reports filed by respondents are accurate as to the identity of the party or parties that made the loans at issue. We therefore determine that petitioner's allegation, set forth in count I of his complaint, that respondents violated section 9-11 of the Election Code by falsely reporting the identity of the parties that loaned the Group $390,000 in 2002 has some basis in fact and law and appears to have been filed on justifiable grounds and conclude that the Board's decision to the contrary is clearly erroneous.

In reaching that conclusion, we have considered *Troy v. State Board of Elections*, 84 Ill. App. 3d 740, 742-43 (1980), cited by respondents, in which this court affirmed the Board's dismissal of the petitioner's complaint because the evidence presented by the petitioner was insufficient to provide reasonable grounds for further inquiry, the respondent presented evidence rebutting the petitioner's allegations, and the petitioner challenged activity that was not regulated by the Election Code. Respondents assert that the facts in this case are similar to those in *Troy* because in this case petitioner did not allege that they failed to fully disclose the loans made to the Group and did not produce any evidence except for the disclosure forms that had already been filed with the Board.

The record shows, however, that petitioner alleged in his complaint that respondents violated section 9-11 of the Election Code by falsely reporting the *identity* of the party or parties that made the loans at issue. In addition, the semiannual reports presented by petitioner and the unconvincing testimony provided by Elizabeth Gorman and Peg Walsh provide reasonable grounds for further inquiry to determine the identity of the party or parties which loaned the

1-10-0885

Group $390,000 in 2002.

On direct review of an order of an administrative agency, this court is vested with all the powers provided to the circuit court in section 3-111 of the Administrative Review Law (735 ILCS 5/3-111 (West 2008)). Ill. S. Ct. R. 335(i)(2) (eff. Feb. 1, 1994). As such, this court may affirm or reverse the Board's decision in whole or in part (735 ILCS 5/3-111(a)(5), (a)(6) (West 2008)), and we therefore now consider whether the remaining counts in petitioner's complaint were filed on justifiable grounds.

To the extent that petitioner maintains that the Board clearly erred by dismissing count II of his complaint, we disagree. In count II, petitioner alleged that respondents violated section 9-11 of the Election Code by falsely reporting the recipient of an expenditure of $100,080 made by the Group on June 28, 2002. However, section 9-11 of the Election Code (10 ILCS 5/9-11 (West 2002)) only addresses disclosure requirements for contributions received by respondents, and not the disclosure requirements regarding their expenditures and the identity of persons to whom they owe debts or obligations, which are addressed in section 9-13 (10 ILCS 5/9-13(12), (15) (West 2002)). Thus, count II of petitioner's complaint has no basis in law, and we therefore conclude that the Board did not clearly err by dismissing that count for not being filed on justifiable grounds.

## II. Counts IV and V

In counts IV and V of his complaint, petitioner alleged that respondents violated sections 9-8.10(a)(3) and 9-8.10(a)(4) of the Election Code by making expenditures to Gerald Gorman to reimburse him for mortgage payments made on a personal residence. A political committee shall

not make expenditures "[f]or satisfaction or repayment of any debts other than loans made to the committee or to the public official or candidate on behalf of the committee or repayment of goods and services purchased by the committee under a credit agreement." 10 ILCS 5/9-8.10(a)(3) (West 2006). In addition, a political committee shall not make expenditures "[f]or the satisfaction or repayment of any debts or for the payment of any expenses relating to a personal residence." 10 ILCS 5/9-8.10(a)(4) (West 2006).

The semiannual report filed by the Group with the Board for the period of July 1 through December 31, 2007, shows that the Group made three expenditures totaling $8,000 to Gerald Gorman on July 31, October 4, and November 5, 2007, and that the stated purpose for each expenditure was "Partial Repayment of Loan for FSNB." The semiannual reports filed by the Group for the periods of January 1, 2006, through June 30, 2007, and July 1, 2008, through June 30, 2009, show that the Group made 18 expenditures totaling $37,075 to Gerald Gorman during those periods of time and that the stated purpose for each expenditure was "Partial Repayment of Loan." The record also shows that FSNB filed two mortgage foreclosure complaints against multiple defendants, including Elizabeth and Gerald Gorman, on April 3, 2009.

At the closed preliminary hearing, Peg Walsh testified that Gerald Gorman had a personal account at FSNB and that the bank was included in the purpose statement for the expenditures at issue to indicate into which bank those payments had been deposited. Elizabeth Gorman testified that the expenditures were partial loan repayments made to Gerald Gorman and that FSNB was included in the purpose statements to reflect that the funds were deposited into Gerald's personal account at that bank.

The hearing examiner concluded that counts IV and V of petitioner's complaint were not filed on justifiable grounds. In doing so, he stated that Walsh and Elizabeth Gorman had testified that the expenditures at issue were partial loan repayments and determined that petitioner had not provided any evidence showing otherwise.

We decide, however, that petitioner presented sufficient evidence at the preliminary hearing to provide the allegations made in counts IV and V of his complaint with some basis in fact and law. The semiannual reports show that the Group reported that the expenditures at issue were made for the purpose of "Partial Repayment of Loan for FSNB," but also reported that all other expenditures made to Gerald Gorman from January 2006 through June 2009 were made for the purpose of "Partial Repayment of Loan." Although Walsh and Elizabeth Gorman testified that FSNB was included in the purpose statements to signify that the expenditures at issue were to be deposited into Gerald Gorman's personal account at FSNB, they did not explain why the purpose statements for the other expenditures made to Gerald Gorman did not also include a notation regarding the bank into which the funds had been deposited. In addition, the expenditures at issue were described as being made *for* FSNB, rather than *to* FSNB or *at* FSNB, which were more accurate ways to signify that the payments had been deposited in Gerald Gorman's personal account at that bank.

As such, the semiannual reports and the mortgage foreclosure complaints, the existence of which indicate that the Gormans were most likely making mortgage payments to FSNB at the time the Group made the expenditures at issue, provide support for petitioner's claim that respondents violated sections 9-8.10(a)(3) and 9-8.10(a)(4) of the Election Code by using the

Group's funds to reimburse Gerald Gorman for payments made on the Gormans' mortgage with FSNB. The testimony of Walsh and Elizabeth Gorman did not effectively rebut that claim, and respondents did not present any other evidence, documentary or otherwise, to support their assertion that the expenditures were proper partial loan repayments made to Gerald Gorman's personal account at FSNB. As such, we determine that the hearing examiner's conclusion, which was adopted by the Board, that petitioner did not present any evidence showing that the expenditures at issue were anything other than partial loan repayments is clearly erroneous. We therefore also decide that counts IV and V of petitioner's complaint have some basis in fact and law and appear to have been filed on justifiable grounds and conclude that the Board's decision to dismiss those counts is clearly erroneous.

### III. Count VII

In count VII of his complaint, petitioner alleged that respondents violated section 9-8.10(a)(11) of the Election Code by making expenditures to Gerald Gorman for loans that he never made and for services that he never rendered. A political committee shall not make an expenditure for payments to a public official's family member unless it is "compensation for services actually rendered by that person." 10 ILCS 5/9-8.10(a)(11) (West 2002).

The semiannual reports filed by the Group with the Board show that the Group made numerous alleged partial loan repayments to Gerald Gorman from 2002 through 2009. Having already decided that the identity of the party that loaned the Group $390,000 in 2002 is unclear from the evidence presented at the closed preliminary hearing, we now also determine that petitioner's allegation that the Group made expenditures to Gerald Gorman for repayment of

1-10-0885

loans that he never made has some basis in fact and law and appears to have been filed on justifiable grounds. We therefore conclude that the Board's dismissal of count VII for not being filed on justifiable grounds is clearly erroneous.

Petitioner has not challenged the Board's dismissal of the remaining counts of his complaint in this appeal. Accordingly, we affirm the portions of the Board's order dismissing counts II, III, VI, and VIII of petitioner's complaint and reverse the portions of the Board's order dismissing counts I, IV, V, and VII. We therefore remand the matter to the Board to order a public hearing to be conducted on counts I, IV, V, and VII of petitioner's complaint in accordance with the procedures set forth in the Election Code (10 ILCS 5/9-21 (West 2008)) and the Administrative Code (26 Ill. Adm. Code 125.310 *et seq.* (Conway Greene CD-Rom June 2000)).

Affirmed in part and reversed and remanded in part.

1-10-0885

<u>REPORTER OF DECISIONS - ILLINOIS APPELLATE COURT</u>
(Front Sheet to be Attached to Each case)

MARK THOMPSON,

              Petitioner-Appellant,

<u>v.</u>

<u>ILLINOIS STATE BOARD OF ELECTIONS, ELIZABETH GORMAN and THE GORMAN</u>
<u>GOOD GOVERNMENT GROUP,</u>

              Respondents-Appellees.

<u>No. 1-10-0885</u>

<u>Appellate Court of Illinois</u>
<u>First District, Fourth Division</u>

<u>Opinion filed January 13, 2011</u>
<u>Modified upon denial of rehearing March 17, 2011</u>

<u>PRESIDING JUSTICE GALLAGHER delivered the opinion of the court.</u>

<u>HOFFMAN and LAVIN, JJ., concur.</u>

<u>Petition for Review from the Illinois State Board of Elections.</u>

<u>For APPELLANT, Richard K. Means, Oak Park, IL (Richard K. Means, of counsel)</u>

<u>For APPELLEE Gorman, Odelson & Sterk, Ltd., Evergreen Park, IL (Burton S. Odelson, of</u>
<u>counsel)</u>

<u>For APPELLEE Illinois State Board of Elections, Attorney General, State of Illinois, Chicago, IL</u>
<u>(Lisa Madigan, Michael A. Scodro, Timothy K. McPike, of counsel)</u>