# ILLINOIS OFFICIAL REPORTS

## Appellate Court

*Sorock v. Illinois State Board of Elections*, 2012 IL App (1st) 112740

| | |
|---|---|
| Appellate Court Caption | HERBERT SOROCK, Petitioner-Appellant *pro se*, v. ILLINOIS STATE BOARD OF ELECTIONS, and CITIZENS FOR WILMETTE SCHOOLS, Gail Thomason, Chair, Respondents-Appellees. |
| District & No. | First District, Fifth Division<br>Docket No. 1-11-2740 |
| Filed | July 13, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The work a self-employed Web page designer did in creating a Web page for a political committee did not constitute a "contribution" within the meaning of the Election Code and the committee was not required to report the designer's work as a contribution in excess of $1,000 prior to the election at issue. |
| Decision Under Review | Petition for review of order of Illinois State Board of Elections, No. 11-CD-026. |
| Judgment | Affirmed. |

Counsel on
Appeal

Herbert Sorock, of Wilmette, appellant *pro se*.

Michael J. Kasper, of Chicago, for appellee Citizens for Wilmette Schools.

Lisa Madigan, Attorney General, of Chicago (Michael Scodro, Solicitor General, and Timothy K. McPike, Assistant Attorney General, of counsel), for appellee Illinois State Board of Elections.

Panel

JUSTICE McBRIDE delivered the judgment of the court, with opinion.

Presiding Justice Quinn and Justice Palmer concurred in the judgment and opinion.[1]

## OPINION

¶ 1  Petitioner *pro se* Herbert Sorock, a resident of Wilmette, appeals from an order of the Illinois State Board of Elections (Board) dismissing his complaint against respondent local political committee Citizens for Wilmette Schools, Gail Thomason, chair (political committee or Citizens), regarding a self-employed Web page designer's voluntary creation of a Web page for the political committee. In this case of first impression, Sorock contends the Illinois Election Code (10 ILCS 5/9-1 *et seq.* (West 2010)) (Code) required the political committee to report the value of the volunteered services as an in-kind contribution. Section 9-1.4(A)(4) of the Code defines " 'Contribution' " to include "the services of an employee donated by an employer, in which case the contribution shall be listed in the name of the employer, except that any individual services provided voluntarily and without promise or expectation of compensation from any source shall not be deemed a contribution." 10 ILCS 5/9-1.4(A)(4) (West 2010). The Board's dismissal was based on the Web designer's sworn statement that she was self-employed and had given her services to the committee voluntarily and without promise or expectation of compensation from any source. On direct appeal, Sorock contends the quoted statutory language applies only where there is an employer-employee relationship, it does not concern people who are self-employed, and the relevant clause sweeps in the Web designer's donated time as something "of value that constitutes an electioneering communication." 10 ILCS 5/9-1.4(A)(1.5) (West 2010).

¶ 2  On January 19, 2011, the respondent political committee filed a "Form D-1 Statement

---

[1]Justice Joseph Gordon participated in oral arguments for this case. After Justice Gordon's death, Presiding Justice Patrick J. Quinn reviewed the briefs, the record, and the audio recording of the oral arguments.

of Organization" with the Board stating that its organizational purpose was to support the passage of a referendum on the ballot for April 5, 2011. The record on appeal does not disclose the referendum's subject. A political committee which accepts or expends more than $3,000 during any 12-month period must periodically report its contributions and expenditures. 10 ILCS 5/9-1.8 (West 2010) (defining political committees and creating the $3,000 reporting threshold); 10 ILCS 5/9-6 (West 2010) (requiring every contributor to give the political committee's treasurer a detailed account of his or her contribution); 10 ILCS 5/9-7 (West 2010) (requiring treasurer to create and preserve records); 10 ILCS 5/9-10 (West 2010) (requiring treasurer to file reports with the Board). The statutory scheme is intended to preserve the integrity of the electoral process by requiring full public disclosure of the sources and amounts of campaign contributions and expenditures. *Walker v. State Board of Elections*, 72 Ill. App. 3d 877, 881, 391 N.E.2d 507, 510 (1979). The legislature intended for Illinois citizens to be informed of the total contributions received and expended by a political committee, the names of significant contributors and of individuals to whom a political committee is indebted. *Walker*, 72 Ill. App. 3d at 881, 391 N.E.2d at 510. It was on or about March 31, 2011, that Shari Gottlieb, a self-employed graphics and Web site designer, volunteered her services to design a Web site for the committee, and on March 31, 2011, she sent the committee a notice of an in-kind contribution of $3,435 for the value of her work. The election occurred as scheduled on the 5th of April. On April 15, 2011, the political committee filed a "Form D-2, Report of Campaign Contributions and Expenditures, Quarterly Report," which included Gottlieb's $3,435 in-kind contribution for "graphic/web design" and identified her as "self-employed" and her occupation as "Graphic/Web Designer."

¶ 3 On May 6, 2011, Sorock filed a two-count verified complaint with the Board. His first count, which is not at issue here, indicated the committee's Form D-1 incorrectly identified the organization as a "political action committee" rather than a "ballot initiative committee." The committee responded that it had marked the wrong box on its Form D-1 and it filed an amended form D-1 which corrected the error. Sorock's second count concerned the timing of the committee's disclosure of Gottlieb's work. Section 9-10(c) of the Code requires that, in the 30-day period before an election, any contribution of $1,000 or more from a single source be reported on a Schedule A-1 within two business days after receipt of the contribution. 10 ILCS 5/9-10(c) (West 2010). Sorock alleged the committee should have filed a Schedule A-1 reporting Gottlieb's in-kind contribution before including it in a subsequent quarterly report.

¶ 4 Once a complaint is filed, a closed preliminary hearing is conducted by a hearing officer "to elicit evidence on whether the complaint was filed on justifiable grounds and has some basis in fact and law." 26 Ill. Adm. Code 125.252 (2012) (hearing officer shall be appointed and closed preliminary hearing shall be ordered); 26 Ill. Adm. Code 125.252 (2012) (scope of preliminary hearing); see also 10 ILCS 5/9-21 (West 2010) (upon receipt of complaint, a closed preliminary hearing shall be conducted). The complainant bears the burden of introducing sufficient evidence or information for the Board to conclude that the complaint has been filed on justifiable grounds. 26 Ill. Adm. Code 125.252(c)(4) (2012). The justifiable grounds standard focuses on the factual and legal sufficiency of the complaint. *Cook County*

*Republican Party v. Illinois State Board of Elections*, 232 Ill. 2d 231, 245, 902 N.E.2d 652, 661 (2009).

¶ 5    In this case, a hearing officer for the Board conducted a closed preliminary hearing in Chicago on June 13, 2011, and, after his death, a different hearing officer listened to the recorded hearing and filed a written report on July 13, 2011, summarizing the proceedings and offering recommendations to the Board. According to the hearing officer's report, the respondent's attorney had indicated that the committee did not neglect to file a Schedule A-1 regarding Gottlieb's work; rather, it no longer considered her services to be a contribution within the meaning of the Code and had filed an amended first quarterly report on June 10, 2011, which omitted an entry regarding her. The committee's counsel referred to section 9-1.4(A)(4) of the Code, which we quoted at the outset of this opinion, and tendered Gottlieb's affidavit stating that she volunteered her Web page designing time with no promise or expectation of payment, the work was done from her home, and she incurred no out-of-pocket expense. Counsel argued that personal services do not have to be reported as contributions and that it is a first amendment right to voluntarily provide service. Counsel said his client had simply misunderstood the law when it initially reported the value of Gottlieb's work as a contribution. The hearing officer found this argument persuasive and recommended that the Board determine that although Sorock's complaint had been made in good faith at the time, the fact that the contribution had been removed by the committee's amended quarterly filing and Gottlieb had provided an affidavit meant that a Schedule A-1 was unnecessary, the complaint now lacked justifiable grounds, and no further action needed to be taken.

¶ 6    The established procedures call for the general counsel for the Board to review the hearing officer's recommendations and the evidence presented at the closed preliminary hearing. 26 Ill. Adm. Code 125.253 (2012) (responsibilities of the general counsel). The general counsel then makes his or her own recommendation to the Board. 26 Ill. Adm. Code 125.253 (2012). In this instance, the general counsel concurred with the hearing officer's recommendation.

¶ 7    The Board must then decide whether the complaint was filed on justifiable grounds. 26 Ill. Adm. Code 125.262(a) (2012). "If the Board determines that the complaint was filed on justifiable grounds, and if the respondent is unwilling to take action necessary to correct the violation or refrain from the conduct giving rise to the violation, it shall order a public hearing ***." 26 Ill. Adm. Code 125.262(a) (2012). "If the Board fails to determine that the complaint has been filed on justifiable grounds, it shall dismiss the complaint without further hearing." 10 ILCS 5/9-21 (West 2010); *Cook County Republican Party*, 232 Ill. 2d at 239-40, 902 N.E.2d at 658 (interpreting the statutory language as amended in 2003). On August 19, 2011, in a closed session of its regular monthly meeting, the Board considered the hearing officer's report, the general counsel's recommendations, and the parties' oral arguments, and then issued a final order finding in relevant part that the second count of Sorock's complaint was not filed on justifiable grounds.

¶ 8    On August 25, 2011, Sorock filed a motion for the Board's reconsideration, in which he argued that Gottlieb's donation did not come within the statute cited by the committee, because that language was applicable only to employer-employee relationships and Gottlieb

had no such relationship. Sorock also argued Gottlieb's donation was a reportable contribution as an "electioneering communication" within the meaning of section 9-1.4(A)(1.5) of the Code, which we will set out below. 10 ILCS 5/9-1.4(A)(1.5) (West 2010). On September 15, the Board's general counsel recommended that Sorock's motion be denied on grounds that it essentially restated the unpersuasive arguments he made to the hearing officer in June and the Board at its August meeting. On September 19, 2011, the Board heard the parties' arguments and on September 20, 2011, the Board issued its final order adopting the general counsel's recommendation and denying Sorock's motion for reconsideration.

¶ 9    Sorock now seeks administrative review. See 10 ILCS 5/9-22 (West 2010) (a dismissed complaint can be appealed directly to the appellate court).

¶ 10   When the Board adopts reasons for dismissing a complaint from the general counsel's detailed recommendation and finds that there are no justifiable grounds to convene a public hearing, section 9-21 requires dismissal (10 ILCS 5/9-21 (West 2010)), and the Board's reasons are reviewed for clear error as to whether the complaint was instead factually and legally justified. See, *e.g.*, *Cook County Republican Party*, 232 Ill. 2d at 245, 902 N.E.2d at 661; *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 88, 606 N.E.2d 1111, 1117 (1992) (on administrative review, it is not the court's function to reweigh the evidence or make an independent determination of the facts); *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 205, 692 N.E.2d 295, 302 (1998). The clear error standard is a deferential one that allows for reversal only when the reviewing court has a definite and firm conviction that a mistake of law was made. *Cook County Republican Party*, 232 Ill. 2d at 245, 902 N.E.2d at 661. The clearly erroneous standard provides some deference based upon the agency's experience and expertise, and it falls between *de novo* review and manifest-weight-of-the-evidence review. *McKee v. Board of Trustees of the Champaign Police Pension Fund*, 367 Ill. App. 3d 538, 543, 855 N.E.2d 571, 575 (2006).

¶ 11   Sorock contends that the Web site Gottlieb created met the four statutory criteria of an "Electioneering communication," as a "broadcast, cable, or satellite communication, including radio, television, or Internet communication, that (1) refers to *** (iii) a clearly identified question of public policy that will appear on the ballot, (2) is made within (I) 60 days before a general election or consolidated election or (ii) 30 days before a primary election, (3) is targeted to the relevant electorate, and (4) is susceptible to no reasonable interpretation other than as an appeal to vote for or against a clearly identified candidate, *** a political party, or a question of public policy." 10 ILCS 5/9-1.14(a) (West 2010). More specifically, Sorock contends (1) the Web site advocated for the passage of a ballot question on April 5, 2011, (2) the Web site was in operation no later than March 31, 2011, which was within 60 days of the balloting, (3) the Web site was available to and targeted at voters, and the Web site could be reasonably interpreted only as an appeal to vote "yes" on the public question. Sorock emphasizes that the statutory definition of a "contribution" includes "anything of value that constitutes an electioneering communication made in concert or cooperation with or at the request, suggestion, or knowledge of a candidate, a political committee, or any of their agents." 10 ILCS 5/9-1.4(A)(1.5) (West 2010). Sorock concludes that Gottlieb's "contribution" had an ascertainable market value of $3,435 as stated in her notice of an in-kind contribution, which is an amount greater than the $1,000 threshold at

which a Schedule A-1 must be filed (10 ILCS 5/9-10(c) (West 2010)), and that the respondent committee violated the Code when it failed to timely file a Schedule A-1 prior to the election.

¶ 12 The committee responds that Sorock confuses Gottlieb's volunteer time constructing a Web site with actual communication and that Sorock presented no evidence the Web designer communicated any message to anyone. See 26 Ill. Adm. Code 125.252(c)(4) (complainant bears burden of introducing evidence or information sufficient for the Board to conclude that the complaint has been filed on justifiable grounds); *Thompson v. Illinois State Board of Elections*, 408 Ill. App. 3d 410, 414, 945 N.E.2d 625, 629 (2011). The other appellee, the Board, contends the record shows only that Gottlieb donated her time, a visual layout, and the programming code necessary for the new Web site to function, and that Sorock has never shown or even argued that Gottlieb authored any content advocating the committee's position on the referendum. The Board analogizes Gottlieb's efforts to a carpenter building an empty billboard. Thus, both appellees contend Gottlieb did not engage in any communication. As for the contention that Gottlieb's work had a reportable value, the committee contends Sorock is essentially advocating that political committees assign a value to each volunteer's activity, even if that activity is stuffing envelopes, and then publicly disclose each volunteer/contributor's name and address, which would seriously infringe on the rights of privacy of association and belief guaranteed by the first amendment.

¶ 13 We find the arguments of the committee and Board persuasive. In our opinion, there is an obvious difference between creating a platform for a message and creating the actual content of that message. The record compiled for our review indicates Gottlieb created a functional and perhaps visually appealing Web site, but it does not suggest she authored the content of whatever message the political committee chose to communicate on that site. She worked out of the public's view, in the privacy of her home, while creating a layout for the committee's material. When Gottlieb finished volunteering, she turned her work product over to the committee. Her time cannot be construed as an "electioneering communication" because time is not a communication of any kind. 10 ILCS 5/9-1.14(a) (West 2010). Furthermore, her visual design cannot be deemed an "electioneering communication" because it did not "refer[ ] to *** a clearly identified question of public policy that will appear on the ballot," and regardless of when she performed the work, her efforts were transparent to the public, were not "targeted to the relevant electorate" and cannot be construed as "an appeal to vote for or against a clearly identified candidate[,] *** a political party, or a question of public policy." 10 ILCS 5/9-1.14(a) (West 2010). Neither the Web site design time nor the layout Gottlieb produced came within the terms of the statute Sorock relies upon.

¶ 14 Furthermore, we share the committee's concern that construing Gottlieb's behind-the-scenes efforts as a " 'Contribution' " ("anything of value that constitutes an electioneering communication" (10 ILCS 5/9-1.4(A)(1.5) (West 2010)) would sweep all volunteered time into the definition of a contribution. Then, the name and address of nearly every volunteer would have to be publicly disclosed, because section 9-11(a)(4) of the Code requires the disclosure of the full name and mailing address of each person who has made one or more contributions which aggregate in amount or value in excess of $150. 10 ILCS 5/9-11(a)(4)

(West 2010). And if the value of any volunteer activity exceeded $500, the recipient committee would also be required to report the volunteer's occupation and employer. 10 ILCS 5/9-11(a)(4) (West 2010). Reporting volunteer work raises first amendment issues. Courts throughout this country, including the nation's highest court, have consistently rejected the wholesale and mandatory disclosure of the names of political associates, and the United States Supreme Court has "repeatedly found that compelled disclosure, in itself, can seriously infringe on privacy of association and belief guaranteed by the First Amendment." *Buckley v. Valeo*, 424 U.S. 1, 64 (1976) (per curiam) (upholding federal campaign law requiring disclosure of campaign payments because knowing where money comes from and how it is spent aids electors in evaluating candidates). It is believed that "compelled disclosure *** may induce members to withdraw from the [political group] and dissuade others from joining it because of fear of exposure of their beliefs shown through their associations and of the consequences of this exposure." *National Ass'n for the Advancement of Colored People v. Alabama ex rel. Patterson*, 357 U.S. 449, 462-63 (1958) (disclosure of membership list was likely to deter free enjoyment of right to associate); *Buckley v. American Constitutional Law Foundation, Inc.*, 525 U.S. 182, 204 (1999) (disclosure of names, addresses, and payments made to the circulators of ballot-initiative petitions forced them to surrender anonymity and was unjustifiable inhibition on free speech). See also *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334 (1995) (ban on distribution of anonymous campaign literature was an improper restraint; political speech will sometimes have unpalatable consequences but, in general, our society accords greater weight to the value of free speech than to the dangers of its misuse). Furthermore, when considering a mandatory disclosure statute, Supreme Court Justice Brennan remarked on the crucial role of volunteers in our political process:

> "Unquestionably, the lifeblood of today's political campaigning must be the work of volunteers. The oppressive financial burden of campaigns makes reliance on volunteers absolutely essential and, in light of the enormous significance of citizen participation to the preservation and strength of the democratic ideal, absolutely desirable, indeed indispensable. Offensive to the sensibilities of private citizens, identification requirements *** even in their least intrusive form, must discourage that participation." *Hynes v. Mayor & Council of Borough of Oradell*, 425 U.S. 610, 626-28 (1976) (Brennan, J., concurring in part, joined by Marshall, J.).

Sorock, nonetheless, urges us to find that the statute mandates disclosure. Also problematic is that his proposed, expansive interpretation of what constitutes a political "contribution" would cap the amount of time a person could legally volunteer to assist a candidate's campaign. Although the statute at issue does not limit contributions to ballot-initiative committees such as the respondent committee, the statute does limit contributions to specific candidates and provides that an individual may contribute no more than $5,000 to a candidate's political committee per election. See 10 ILCS 5/9-8.5(b) (West 2010). Under Sorock's interpretation, Gottlieb could "volunteer" only $5,000 worth of her time to a candidate. A statute that truly limited "the lifeblood of today's political campaigning" (*Hynes*, 425 U.S. at 626-27 (Brennan, J., concurring in part, joined by Marshall, J.)) would raise serious first amendment concerns and we decline to construe the statute as expansively

as Sorock argues.

¶ 15　　Sorock also unpersuasively contends Gottlieb's sworn statement that she is self-employed took her out of the scope of the statute cited by the hearing officer, section 9-1.4(A)(4). 10 ILCS 5/9-1.4(A)(4) (West 2010). According to Sorock, this statute "pertains only to contributions made strictly and exclusively within an employer-employee relationship" and mandates that the employer, not the employee, be listed as the contributor. As stated above, this statute defines " 'Contribution' " to include "the services of an employee donated by an employer, in which case the contribution shall be listed in the name of the employer, except that any individual services provided voluntarily and without promise or expectation of compensation from any source shall not be deemed a contribution." 10 ILCS 5/9-1.4(A)(4) (West 2010). An administrative agency's decision on a question of law, such as the interpretation of a statute, is not binding on review, and is considered *de novo* on appeal. *American Airlines, Inc. v. Department of Revenue*, 402 Ill. App. 3d 579, 587-88, 931 N.E.2d 666, 674 (2009). We apply plain and unambiguous statutory language as it was written by the legislature and do not search for subtle or not readily apparent meaning in the legislature's choice of words. *Ultsch v. Illinois Municipal Retirement Fund*, 226 Ill. 2d 169, 190, 874 N.E.2d 1, 13-14 (2007). Sorock misconstrues this plain and unambiguous statute because he fails to reconcile its full wording. See *Ultsch*, 226 Ill. 2d at 184, 874 N.E.2d at 10-11 (statutes are construed as a whole rather than as isolated, unrelated parts). We think it apparent that the first clause of section 9-1.4(A)(4) *is* about an employer's donation, as Sorock argues, and that pursuant to this clause, if an employer sent an employee to work for a campaign, the employer would effectively contribute the employee's wages or salary to the campaign and make a reportable contribution in that amount. 10 ILCS 5/9-1.4(A)(4) (West 2010). However, the second clause concerns "*any* individual services" and is not limited to a particular employment status as Sorock would have us conclude. (Emphasis added.) 10 ILCS 5/9-1.4(A)(4) (West 2010). The legislature plainly stated that when an "individual" chooses to work for a campaign during his or her personal time, his or her service is not a reportable "contribution." Thus, pursuant to the statute, regardless of whether a volunteer is an employee, self-employed, or even unemployed, he or she may give personal time to a political committee or candidate without making a reportable contribution. Furthermore, the Board points out the impractical consequences of Sorock's proposed interpretation of the statute, in that employed individuals who donate their personal time would not be named in the committee or candidate's public disclosures, but their self-employed and unemployed counterparts would be giving up their anonymity. When construing statutes, courts assume that the legislature did not intend to produce absurd or unjust results. *Mattis v. State Universities Retirement System*, 296 Ill. App. 3d 675, 679, 695 N.E.2d 566, 569 (1998). Sorock does not suggest any reason why the legislature would have drawn such a pointless distinction between volunteers who have employers and volunteers who do not have employers. He does not explain how discriminating on the basis of a person's employment status is consistent with the statutory goal of full public disclosure of the sources and amounts of campaign contributions and expenditures. See *Walker*, 72 Ill. App. 3d at 881, 391 N.E.2d at 510 (indicating the election statute is designed to preserve the integrity of the electoral process and that it keeps "the public *** informed of the total contributions

received and expended by a political committee, the names of significant contributors and of individuals to whom a political committee is indebted"). His argument regarding Gottlieb's self-employed status is not well-taken.

¶ 16 Based on the particular facts of this case, we conclude Gottlieb did not make a "contribution" within the meaning of the Code. We further find that the committee was not required to file a Schedule A-1 prior to the April 2011 election in order to report a contribution from Gottlieb in excess of $1,000. These findings lead us to reject Sorock's contention that the committee committed a new statutory violation when it amended its Form D-2 quarterly report to remove the value of Gottlieb's volunteered services.

¶ 17 Sorock's final argument is procedural. He contends the committee's campaign finance disclosures were sufficient factual evidence to warrant that his complaint proceed to an open hearing before the Board, but the hearing officer foreclosed this outcome when he exceeded his authority by ruling on a question of law, namely, that section 9-1.4(A)(4) exempted disclosure of Gottlieb's contribution. Sorock asks us to find that his complaint was filed on justifiable grounds and to remand this matter to the Board so that Sorock may prove his allegations. This argument fails because it is factually incorrect. The record, summarized above, indicates the Board made its independent determination adopting the recommendations of the hearing officer and general counsel. See *Hossfeld v. Illinois State Board of Elections*, 238 Ill. 2d 418, 423, 939 N.E.2d 368, 371 (2010) (a reviewing court may examine the hearing officer's report and the general counsel's recommendation for a detailed explanation of the Board's decision); *Cook County Republican Party*, 232 Ill. 2d at 244, 902 N.E.2d at 661. The Board, not the hearing officer, decided Sorock's complaint was not filed on justifiable grounds.

¶ 18 None of Sorock's arguments for reversal and remand is convincing. The Board's dismissal of the complaint Sorock lodged against the political committee is affirmed.

¶ 19 Affirmed.